[No. S028100. June 24, 1993.]

CHARMAINE ROBERTS, Plaintiff and Appellant, v.
CITY OF PALMDALE et al., Defendants and Respondents.

**COUNSEL**

Barbara S. Blinderman, Jonathan L. Blinderman and Jeffrey S. Cohen for Plaintiff and Appellant.

Quentin Kopp, Jonathan M. Coupal and Mark Rosenbaum as Amici Curiae on behalf of Plaintiff and Appellant.

Richards, Watson & Gershon, Pamela A. Albers, Marsha Jones Moutrie and Glenn R. Watson for Defendants and Respondents.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Jan S. Stevens, Assistant Attorney General, Richard M. Frank, Deputy Attorney General, and Ariel Pierre Calonne, City Attorney (Palo Alto), as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**MOSK, J.**—In this case we answer three questions. Does the California Public Records Act (Gov. Code, § 6250 et seq.) require public disclosure of a letter from the city attorney distributed to members of the city council, expressing the legal opinion of the city attorney regarding a matter pending before the council?[1] Is the transmission of the written legal opinion at issue in this case a "meeting" within the terms of the Ralph M. Brown Act (§ 54950 et seq.)? Was a 1987 amendment to the Brown Act intended to abrogate the attorney-client privilege as it applies to the communication of written legal advice by a city attorney to a city council? We answer all three questions in the negative and reverse the decision of the Court of Appeal. Because we reach this result, we need not consider the question whether the remedy ordered by the Court of Appeal was appropriate under the Brown Act.

I

The planning commission of the City of Palmdale approved a parcel map application, and appellant Charmaine Roberts, a resident and taxpayer of the

[1]All statutory references are to the Government Code unless otherwise indicated.

city affected by the proposed development, appealed to the Palmdale City Council. The city council took up the appeal at a public meeting. Appellant's attorney wrote an eight-page letter to the city council, arguing that the approval of the parcel map was subject to legal challenge in several respects, and concluding that unless it reversed the approval of the parcel map, the city council was "a willing party to this flagrant effort to undermine its own laws and will be vulnerable to a court action to overturn its decision."

The city council referred the letter to the city attorney and continued the hearing on the matter. The city attorney prepared a confidential written response that was distributed to the members of the city council. A public meeting ensued, at which the issues raised in the letter by appellant's counsel were discussed. At the hearing, appellant did not ask to see the letter from the city attorney to the city council, though the letter was referred to at that hearing. The city council denied the appeal and approved the map. Five days later, appellant's counsel demanded a copy of the city attorney's letter, arguing that the denial of the appeal and approval of the map were void if the city council had acted on the basis of secret communications. The city council refused to provide appellant with a copy of the letter from the city attorney.

Appellant petitioned for administrative mandamus, seeking injunctive and declaratory relief to void the action of the city council and require the city council to make the disputed letter public. She contended that the action of the city council in denying her appeal and approving the map application should be overturned because the council had violated the Public Records Act and the Brown Act when it failed to make public the letter it had received from the city attorney.

The superior court denied appellant's motion for summary judgment on her writ petition, concluding that even if appellant were correct that the document at issue was not privileged, there was no ground for voiding the city council's action. Appellant then moved for summary adjudication of the issue of privilege alone, contending that even if the city council's action was not void, she was entitled to a copy of the letter from the city attorney because the letter was a public document. The motion was denied on the ground of privilege. The court also held that the question of remedy was moot because the challenged parcel map had expired, and it denied the petition for administrative mandamus on that ground. This appeal followed.

The Court of Appeal reversed, holding that the city council had violated provisions of the Brown Act in receiving a confidential letter from its attorney about the legal points raised by appellant's attorney. The Court of

Appeal made the crucial assumption that the receipt of a letter from the city attorney is a "meeting" within the terms of the Brown Act. Its conclusion followed naturally from that assumption, but, as we shall demonstrate, the assumption was mistaken.

The Court of Appeal accepted the determination of the trial court that the letter fell within the definition of the attorney-client privilege in that it was a confidential communication between lawyer and client within the meaning of section 952 of the Evidence Code. It noted that the Brown Act permits a city council to meet in closed session with its attorney only when the issue under discussion is "pending litigation." Again assuming for the purpose of discussion that the letter related to pending litigation, the court explained that section 54956.9 requires any such closed session to be announced publicly before the session may commence.

The Court of Appeal rejected the city's contention that the receipt of a letter from counsel is not the equivalent of a "meeting" within the terms of the Brown Act. The court explained that such an interpretation would allow public agencies to do indirectly what they cannot do directly, and relied on decisions holding the Brown Act applicable to informal meetings of local governing bodies. (See, e.g., *Stockton Newspapers, Inc.* v. *Redevelopment Agency* (1985) 171 Cal.App.3d 95, 102-105 [214 Cal.Rptr. 561].) The Court of Appeal also turned to a recent amendment of section 54956.9 to support its conclusion that the attorney-client privilege available to local agencies is limited by the requirements of the Brown Act. The court concluded that the Brown Act adequately protects the interest of public agencies in maintaining the confidentiality of communications from counsel, because unless pending litigation justifies the assertion of the privilege, the public is not the adversary of the public agency and there is no need for secrecy between them. It determined that the city's failure to announce the "closed session" as required by section 54956.9 constituted a waiver of any attorney-client privilege, and ordered public disclosure of the letter in controversy.

II

A. *The Public Records Act*

The first question we must answer is whether the city council may assert the attorney-client privilege as to the letter at issue in this case under

the authority of the Public Records Act, though the letter did not relate to pending litigation.[2]

■ The Public Records Act, section 6250 et seq., was enacted in 1968 and provides that "every person has a right to inspect any public record, except as hereafter provided." (§ 6253, subd. (a).) We have explained that the act was adopted "for the explicit purpose of 'increasing freedom of information' by giving the public 'access to information in possession of public agencies.'" (*CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].) As the Legislature declared in enacting the measure, "the Legislature . . . finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.)

A "public record" is defined as a "writing containing information relating to the conduct of the public's business prepared, owned, used or retained by any state or local agency regardless of physical form or characteristics." (§ 6252, subd. (d).) ■ It is uncontroverted that the letter at issue in this case falls into this definition.

The act exempts certain public records from disclosure (see, e.g., §§ 6253.5, 6254, subds. (a)-(w), 6254.1, 6254.3, 6254.4, 6254.7, 6254.10, 6254.11, 6254.25), including "[r]ecords the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (§ 6254, subd. (k).) By its reference to the privileges contained in the Evidence Code, therefore, the Public Records Act has made the attorney-client privilege applicable to public records.

Evidence Code sections 950 et seq. define the attorney-client privilege. Evidence Code section 951 defines a client for the purpose of the privilege as a "person" and Evidence Code section 175 defines "person" to include a "public entity." ■ Ample authority acknowledges the right of public entities to assert the attorney-client privilege. (*Vela* v. *Superior Court* (1989) 208 Cal.App.3d 141, 150 [255 Cal.Rptr. 921]; *Sutter Sensible Planning, Inc.* v. *Board of Supervisors* (1981) 122 Cal.App.3d 813, 824 [176 Cal.Rptr. 342] [*Sutter Sensible Planning*]; *Sacramento Newspaper Guild* v. *Sacramento County Board of Supervisors* (1968) 263 Cal.App.2d 41, 53 [69 Cal.Rptr. 480] [*Sacramento Newspaper Guild*]; Cal. Law Revision Com. com., West's Ann. Evid. Code, § 951, p. 527; 2 Witkin, Cal. Evidence (3d ed. 1986)

---

[2]The Court of Appeal and the parties also discuss the application of the work-product doctrine to this controversy. We have no need to reach the point, as we have concluded that the city attorney's letter is privileged under the attorney-client privilege.

Witnesses, § 1114, p. 1054; 71 Ops.Cal.Atty.Gen. 5, 9 (1988); see also *Holm v. Superior Court* (1954) 42 Cal.2d 500, 508-509 [267 P.2d 1025]; *Rowen v. Santa Clara Unified School Dist.* (1981) 121 Cal.App.3d 231, 237 [175 Cal.Rptr. 292]; Note, *The California Public Records Act: The Public's Right of Access to Governmental Information* (1976) 7 Pacific L.J. 105, 122, and fn. 96 [*Public Records Act*].)[3]

█ The attorney-client privilege applies to communications in the course of professional employment that are intended to be confidential. (*Holm v. Superior Court, supra*, 42 Cal.2d at p. 506; *City & County of San Francisco v. Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418].) Under the Evidence Code, a client holds a privilege to prevent the disclosure of confidential communications between client and lawyer. (Evid. Code, § 954.) "Confidential communication" is defined as including "a legal opinion formed and the advice given by the lawyer in the course of that [attorney-client] relationship." (Evid. Code, § 952.) █ There is no dispute that the letter at issue in this case meets this definition. █ And, under the Evidence Code, the attorney-client privilege applies to confidential communications within the scope of the attorney-client relationship even if the communication does not relate to pending litigation; the privilege applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened. (*Hoiles v. Superior Court* (1984) 157 Cal.App.3d 1192, 1198 [204 Cal.Rptr. 111]; see also *Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31 [265 Cal.Rptr. 801, 784 P.2d 1373] [upholding privilege as to lawyer's advice regarding termination provision in contract, when discovery was sought in administrative proceeding]; *Rumac, Inc. v. Bottomley* (1983) 143 Cal.App.3d 810, 815-816 [192 Cal.Rptr. 104] [in context of work-product doctrine]; *Sacramento Newspaper Guild, supra*, 263 Cal.App.2d at p. 56; 2 Witkin, Cal. Evidence, *supra*, Witnesses, § 1149, p. 1097; 71 Ops.Cal.Atty.Gen. 5, 6, *supra*.)

█ Appellant asserts that the letter at issue in this case must be disclosed under the Public Records Act even though a private litigant might successfully assert the privilege as to such a letter, because section 6254, subdivision (b), contained in the act, limits the attorney-client privilege in the context of public records to matters that are actually in litigation. Not so. Section 6254, subdivision (b) provides that nothing in the Public Records Act requires disclosure of "[r]ecords pertaining to pending litigation to

---

[3]It is also implicit in Evidence Code section 953 that the attorney-client privilege applies to public entities as clients. Section 953 provides that it is the client who is the holder of the privilege, and specifies that representatives of defunct clients that are not natural persons, such as corporations or public entities, may hold the privilege.

which the public agency is a party, . . . until the pending litigation . . . has been finally adjudicated or otherwise settled." Unlike section 6254, subdivision (k), this section does not specifically address the question of privilege. The subdivision refers to *records* pertaining to pending litigation; it includes, but is in no way limited to, matters covered by the attorney-client privilege. Thus a communication from an attorney advising a public entity may be exempt from disclosure under *both* sections, but section 6254, subdivision (b) does not purport to define the scope of the privilege for the purpose of the Public Records Act. (See 71 Ops.Cal.Atty.Gen. 5, 8, *supra*; 71 Ops.Cal.Atty.Gen. 235, 240-241 (1988).) Subdivision (b) "has been interpreted to encompass many more types of records then [*sic*] would be protected by the attorney-client . . . privilege[]. Thus, it would seem that this subsection was primarily designed to prevent a litigant opposing the government from using the [Public] Records Act's disclosure provisions to accomplish earlier or greater access to records pertaining to pending litigation or tort claims than would otherwise be allowed under the rules of discovery, rather than being aimed solely at preventing discovery of a limited class of documents falling within the purview of the attorney-client . . . privilege[]." (Note, *Public Records Act, supra*, 7 Pacific L.J. at p. 131, fns. omitted.)

Appellant's reliance on *State of California* ex rel. *Division of Industrial Safety* v. *Superior Court* (1974) 43 Cal.App.3d 778 [117 Cal.Rptr. 726] is misplaced. There the court said in dictum that the attorney-client privilege is protected under section 6254, subdivision (b) (43 Cal.App.3d at p. 783), but as the case did not involve any claim for material protected by the attorney-client privilege, but rather for other records involved in ongoing litigation, the court was not called upon to determine whether the attorney-client privilege extends to advice outside the scope of litigation under section 6254, subdivision (k). ■ Obviously, cases are not authority for propositions not considered therein. (*People* v. *Toro* (1989) 47 Cal.3d 966, 978, fn. 7 [254 Cal.Rptr. 811, 766 P.2d 577]; *People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].)[4]

■ Appellant's argument would require that we read section 6254, subdivision (k) as containing an implied exception; that is, that we read the subdivision as recognizing all privileges defined by the Evidence Code *except* the attorney-client privilege. It is not our function, however, to add language or imply exceptions to statutes passed by the Legislature. (Code

---

[4]Appellant's citation to the Final Report of the California State Assembly Statewide Information Policy Committee, March 1970, page 9, is also unavailing. The report simply observed that both subdivisions (b) and (k) of section 6254 are sources of the attorney-client privilege under the act.

Civ. Proc., § 1858; *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557].)

■ Our deference to the Legislature is particularly necessary when we are called upon to interpret the attorney-client privilege, because the Legislature has determined that evidentiary privileges shall be available only as defined by statute. (Evid. Code, § 911.) Courts may not add to the statutory privileges except as required by state or federal constitutional law *(Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977]; see also *Mitchell* v. *Superior Court* (1984) 37 Cal.3d 268, 274, fn. 3 [208 Cal.Rptr. 152, 690 P.2d 625]), nor may courts imply unwritten exceptions to existing statutory privileges. (*Dickerson* v. *Superior Court* (1982) 135 Cal.App.3d 93, 99 [185 Cal.Rptr. 97] [refusing to imply a stockholder's exception to the attorney-client privilege between a corporate client and corporate counsel]; see also Cal. Law Revision Com. com., West's Ann. Evid. Code, § 911, p. 488 [privilege "is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme."].)

■ Our goal is to harmonize the two subdivisions of section 6254 in an attempt to give effect to the whole. (*People* v. *Hull* (1992) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) This end is best reached by recognizing that subdivision (b) of section 6254 refers to litigation records generally, while subdivision (k) specifically refers to matters of privilege, including the attorney-client privilege. We conclude that a local governing body is the holder of the attorney-client privilege with respect to written legal opinions by the governing body's attorney, and may assert the privilege under the Public Records Act without alleging that the writing is relevant to pending litigation under section 6254, subdivision (b).

B. *The Brown Act*

■ Appellant contends that the attorney-client privilege that might otherwise be applicable to public entities under the Public Records Act was abrogated by the Brown Act (§ 54950 et seq.). We disagree.

Despite the broad policy of the act to ensure that local governing bodies deliberate in public (see §§ 54950, 54953), the act itself incorporates the attorney-client privilege as to written materials distributed for discussion at a public meeting. (§ 54957.5.) Courts, too, have interpreted the act as broadly preserving the attorney-client privilege for local governing bodies. (*Sutter Sensible Planning, supra,* 122 Cal.App.3d at p. 824; *Sacramento Newspaper Guild, supra,* 263 Cal.App.2d at p. 55; see also *Rowen* v. *Santa Clara Unified*

*School Dist., supra*, 121 Cal.App.3d at p. 237.) These courts recognize that public entities need confidential legal advice to the same extent as do private clients: " 'Government should have no advantage in legal strife; neither should it be a second-class citizen. . . . "Public agencies face the same hard realities as other civil litigants. An attorney who cannot confer with his client outside his opponent's presence may be under insurmountable handicaps. . . ." Settlement and avoidance of litigation are particularly sensitive activities, whose conduct would be grossly confounded, often made impossible, by undiscriminating insistence on open lawyer-client conferences.' " (*Sutter Sensible Planning, supra*, 122 Cal.App.3d at pp. 824-825.)

Appellant claims that recent amendments to the act require the abrogation of the attorney-client privilege except to the extent specifically provided in section 54956.9 of the Brown Act. The Court of Appeal and also appellant rely on this section, added in 1984, authorizing closed session meetings with legal counsel for the purpose of discussing pending litigation only after advance notice of the need for such confidential consultation. A 1987 amendment to the section also provides that for the purpose of the Brown Act, the attorney-client privilege is abrogated except as provided in section 54956.9.

The argument is that under section 54956.9, any communication of any nature with counsel may only occur between a local governing body and its attorney as provided by the section, and since no litigation was pending or threatened in this case, and no notice of a closed session was given, no closed session with counsel could be permitted. According to this contention, the attorney-client privilege recognized in section 54956.5 is repealed by implication.

Section 54956.9 provides in pertinent part: "Nothing in this chapter shall be construed to prevent a legislative body of a local agency, based on advice of its legal counsel, from holding a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the local agency in the litigation. [¶] For purposes of this chapter, all expressions of the lawyer-client privilege other than those provided in this section are hereby abrogated. This section is the exclusive expression of the lawyer-client privilege for purposes of conducting closed-session meetings pursuant to this chapter." The section sets out three subdivisions defining the circumstances under which litigation is defined as "pending" according to the terms of the statute, and continues: "Prior to holding a closed session pursuant to this section, the legislative body of the local agency shall state publicly to which subdivision it is pursuant. . . . [¶] The legal counsel of the legislative

body of the local agency shall prepare and submit to the body a memorandum stating the specific reasons and legal authority for the closed session. . . . The memorandum shall be exempt from disclosure pursuant to Section 6254.1." (*Ibid.*)

Both the Court of Appeal and appellant assume that the transmission of a legal opinion is a "closed-session meeting" or "closed session" of the city council within the terms of section 54956.9. However, as we shall demonstrate, the history of the Brown Act, its interpretation in the courts, and the plain meaning of the words used by the Legislature demonstrate the error of this assumption.

As we have seen, the keystone of the Brown Act is the requirement that "[a]ll meetings of the legislative body of a local agency shall be open and public. . . ." (§ 54953, subd. (a).) An early case interpreted this language to apply only to formal meetings; an informal " 'fact-finding meeting' " conducted by members of a city planning commission at a local country club was held not within the scope of the act. (*Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 767 [7 Cal.Rptr. 805].) The Legislature responded in 1961 with substantial revisions of the act intended to bring informal deliberative and fact-finding meetings within its scope. (*Stockton Newspapers, Inc.* v. *Redevelopment Agency, supra,* 171 Cal.App.3d at pp. 101-102; 42 Ops.Cal.Atty.Gen. 61, 68 (1963); Comment, *Access to Governmental Information In California* (1966) 54 Cal.L.Rev. 1650, 1654; 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 579, p. 788.) At that time, section 54952.6 was added to provide that the deliberative action covered by the act included "a collective decision made by a majority of the members of a legislative body, a collective commitment or promise by a majority of the members of a legislative body to make a positive or a negative decision, or an actual vote by a majority of the members of a legislative body when sitting as a body or entity, upon a motion, proposal, resolution, order or ordinance." (Stats. 1961, ch. 1671, § 3, p. 3637.)

After the 1961 revisions, the courts have applied provisions of the act to informal deliberative action, but have always required that some sort of collective decisionmaking process be at stake. ■ Thus the action of one public official is not a "meeting" within the terms of the act; a hearing officer whose duty it is to deliberate alone does not have to do so in public. (*Wilson* v. *San Francisco Mun. Ry.* (1973) 29 Cal.App.3d 870, 878-879 [105 Cal.Rptr. 855].) As the Court of Appeal in *Wilson* reasoned, because the act uniformly speaks in terms of collective action, and because the term "meeting," as a matter of ordinary usage, conveys the presence of more than one person, it follows that under section 54953, the term "meeting" means that

"two or more persons are required in order to conduct a 'meeting' within the meaning of the Act." (29 Cal.App.3d at p. 879.)

■ Another court has characterized the term as referring to a *"collective* decision-making process" and as a "deliberative *gathering."* (*Sacramento Newspaper Guild, supra,* 263 Cal.App.2d at pp. 47, 48, italics added.) More recently the Court of Appeal has opined that the term "comprehends informal sessions at which a legislative body commits itself *collectively* to a particular future decision concerning the public business." (*Stockton Newspapers, Inc.* v. *Redevelopment Agency, supra,* 171 Cal.App.3d at pp. 100, 102, italics added; see also 7 Witkin, Summary of California Law, *supra,* Constitutional Law, § 579, p. 788.) Another court has declared that the act applies to informal *collective* acquisition and exchange of facts before a decision is reached. (*Rowen* v. *Santa Clara Unified School Dist., supra,* 121 Cal.App.3d at p. 234 [act prohibits closed session of school board to consider qualifications of real estate agents before public session at which agents would receive contract to dispose of public property].)

In the case law, the terms "meeting" and "session" are used interchangeably (see, e.g., *Stockton Newspapers, Inc.* v. *Redevelopment Agency, supra,* 171 Cal.App.3d at p. 102; *Sacramento Newspaper Guild, supra,* 263 Cal.App.2d at p. 47); we believe the Legislature intended the same usage in section 54956.9. ■ The Legislature's intent is best deciphered by giving words their plain meanings. (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1095 [282 Cal.Rptr. 841, 811 P.2d 1025].) "We have declined to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results." (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) ■ Resort to a dictionary shows that the term "meeting" is defined as "an act or process of coming together; . . . a gathering . . . ." (Webster's Third New Internat. Dict. (1981) p. 1404.) The term "session" is defined as "an actual or constructive sitting of a body (as a court, council, or legislature); also: the actual or constructive assembly of the members of such a body for the transaction of business . . . ." (*Id.* at pp. 2076-2077.) Both terms obviously imply collective action. We conclude that section 54956.9 was intended to apply to collective action of local governing boards and not to the passive receipt by individuals of their mail.

■ Of course the intent of the Brown Act cannot be avoided by subterfuge; a concerted plan to engage in collective deliberation on public business through a series of letters or telephone calls passing from one member of the governing body to the next would violate the open meeting requirement. (See, e.g., *Stockton Newspapers, Inc.* v. *Redevelopment Agency,*

*supra,* 171 Cal.App.3d at p. 102; 65 Ops.Cal.Atty.Gen. 63, 65 (1982).) ▮ There was no evidence in this case, however, that there was any collective deliberation outside of the open meeting where the parcel map was discussed and ultimately granted.

The Court of Appeal and appellant make much of the 1987 amendment to section 54956.9, providing that the attorney-client privilege is abrogated except as provided in section 54956.9. They read far too much into the language which is specifically limited to abrogating the privilege "[f]or purposes of this chapter," that is, for the purpose of chapter 9 commencing at section 54950, otherwise known as the Brown Act. Thus the language of section 54956.9 abrogates the attorney-client privilege for the purpose of the *open meeting* requirements of the Brown Act, except as provided by the section itself, but it does not purport to regulate the transmission of documents such as are at issue in this case. In fact, the section acknowledges that written matter sent from attorney to governmental client is regulated by the *Public Records Act* and not this section, by providing that the attorney's written memorandum of reasons for requesting a closed session required by the section is "exempt from disclosure pursuant to Section 6254.1" of the Public Records Act. (§ 54956.9.)

We see nothing in the legislative history of the amendment suggesting the Legislature intended to abrogate the attorney-client privilege that applies under the Public Records Act, or that it intended to bring written communications from counsel to governing body within the scope of the Brown Act's open meeting requirements.

Both appellant and respondent refer to letters written by proponents of the legislation and recorded in the Senate Journal on the day the bill passed the Senate. (1 Sen. J. (1987-1988 Reg. Sess.) pp. 1775-1782.) The Senate printed letters from the Attorney General of the state; from Senator Roberti as author of the bill; from the California Newspaper Publishers Association; from Assemblyman Connelly, principal Assembly coauthor of the bill; from the County Supervisors Association of California and from the League of California Cities. ▮ As a general rule, in construing a statute we do not consider the motives or understanding of the author of a bill or of individual legislators who voted for it. (*Grupe Development Co.* v. *Superior Court* (1993) 4 Cal.4th 911, 922 [16 Cal.Rptr.2d 226, 844 P.2d 545]; accord, *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589 [128 Cal.Rptr. 427, 546 P.2d 1371].) We have, however, considered letters of intent published by one (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 761-762 [218 Cal.Rptr. 31, 705 P.2d 354]) or both (*In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 588-590) houses of the Legislature when the expression of intent appears to

convey more than merely a personal view of the proponent of the bill. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700 [170 Cal.Rptr. 817, 621 P.2d 856]; *In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 590; cf. *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46, 54, fn. 6 [233 Cal.Rptr. 38, 729 P.2d 202].)

■ Here, we have letters both from the Senate and Assembly authors of the bill, and from proponents of the bill outside the Legislature. There is remarkable unanimity in these six letters to the effect that the bill was intended to close a loophole that was created by *Sacramento Newspaper Guild, supra,* 263 Cal.App.2d 41, and that lingered even after section 54956.9 was enacted, under which it was argued that a governing body's *meetings* with counsel were privileged and did not come under the Brown Act, even if the meetings were not strictly related to pending litigation.

As we have already concluded, the bill was intended to make it clear that closed sessions with counsel could only occur as provided in the Brown Act, that is, after written notice, and in connection with pending or threatened litigation. Two of the letters memorialized in the Senate Journal explicitly state that the amendment was not intended to affect the provisions of the Public Records Act. (See letters of County Supervisors Association of California and League of California Cities, 1 Sen. J., *supra,* (1987-1988 Reg. Sess.), pp. 1780-1782.) None of the letters suggests otherwise. Appellant points to the letter of the California Newspapers Association that "the public must be kept aware of the legal questions asked [of a city attorney] and the answers given. . . . Without access to the legal insights that inform policy judgments at the outset, the people can hardly be said to enjoy that which the Legislature guaranteed them with the enactment of the Brown Act. . . ." (*Id.* at p. 1778.) However, appellant omits the opening paragraphs of the letter, in which the amendment is characterized as providing "the clarification necessary to preclude a certain variety of . . . closed *sessions* by legislative bodies of local agencies" and in which the attorney-client privilege of the Evidence Code was used "as the basis for an implied license for closed *sessions* of legislative bodies to consult with their counsel" on matters other than pending litigation. (*Id.* at p. 1777, italics added.) We believe it clear that the letter refers to deliberative meetings between counsel and the local governing body, not to the transmission of a written legal opinion from counsel to the local entity.

Appellant's claim is essentially that section 54956.9 repeals the attorney-client privilege contained in the Public Records Act by implication. That is, section 54956.9 and its regulation of closed meetings between an attorney and a local agency applies to abrogate the attorney-client privilege which the

Public Records Act makes applicable to public documents. However, repeals by implication are not favored, and we do not recognize them unless two apparently conflicting laws cannot be harmonized. (*Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].) As we recently reiterated, " '[s]o strong is the presumption against implied repeals that when a new enactment conflicts with an existing provision "[i]n order for the second law to repeal or supersede the first, the former must constitute a revision of the entire subject, so that the court may say that it was intended to be a substitute for the first." ' " (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 43 [283 Cal.Rptr. 584, 812 P.2d 931].) We see no evidence of such legislative intent in this case. Rather, the two bodies of law are readily harmonized if we adopt the usual meaning of the words "meeting" and "session": the attorney-client privilege applies to meetings with counsel only as provided by the Brown Act, while the attorney-client privilege is a rule of general applicability in the case of public records.

The Court of Appeal in this case also relied on section 54957.5, subdivision (a) as providing a rule that, according to the court, "public disclosure cannot be avoided by resort to written communications in lieu of open meetings." Section 54957.5, subdivision (a) provides: "Notwithstanding Section 6255 or any other provisions of law, agendas of public meetings and other writings, when distributed to all, or a majority of all, of the members of a legislative body of a local agency by a member, officer, employee, or agent of such body for discussion or consideration at a public meeting of such body, are public records under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1) as soon as distributed, and shall be made available pursuant to Sections 6253 and 6256. However, this section shall not include any writing exempt from public disclosure under Section[s] 6253.5, 6254, or 6254.7."

Viewing the written advice of counsel as coming within the purview of the section, the Court of Appeal went on to examine the exceptions to the open meeting requirement of the *Brown Act* and to find them inapplicable. Yet section 54957.5 itself defers to the *California Public Records Act* (§ 6250 et seq.) as providing the applicable exceptions to the general rule that agendas and other written materials distributed to governing bodies for consideration at a public meeting be disclosed. Thus, far from supporting the conclusion reached by the Court of Appeal, section 54957.5 provides strong support for our conclusion. As we have already seen, under section 6254 of the Public Records Act, the attorney's memorandum would be privileged.

Appellant contends finally that we should disregard the literal language of the relevant statutes because the city attorney is the servant of the public,

and, as a servant, can have no secrets from its master. However rational that view may be in the abstract, the appellant should make her claim known to the Legislature which has determined that the attorney-client privilege does apply in the public arena. Similarly, appellant's argument that public policy is best served by limiting the attorney-client privilege to situations in which there is litigation pending is inconsistent with the decision of the Legislature in enacting the Public Records Act to afford public entities the attorney-client privilege as to writings to the extent authorized by the Evidence Code.[5]

Open government is a constructive value in our democratic society. (See *CBS, Inc.* v. *Block, supra,* 42 Cal.3d at p. 651; see also *Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325, 1347 [283 Cal.Rptr. 893, 813 P.2d 240] (dis. opn. of Mosk, J.), and cases cited.) The attorney-client privilege, however, also has a strong basis in public policy and the administration of justice. The attorney-client privilege has a venerable pedigree that can be traced back 400 years. "[T]he privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice . . . .'" (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 599 [208 Cal.Rptr. 886, 691 P.2d 642]; see also *Southern Cal. Gas Co.* v. *Public Utilities Com., supra,* 50 Cal.3d at p. 37.) It is no mere peripheral evidentiary rule, but is held vital to the effective administration of justice. (See *Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 770-771 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214].) The privilege promotes forthright legal advice and thus screens out meritless litigation that could occupy the courts at the public's expense. (See *City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d at p. 235.) The privilege serves to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." (*Upjohn* v. *United States* (1981) 449 U.S. 383, 389 [66 L.Ed.2d 584, 591, 101 S.Ct. 677].)

 A city council needs freedom to confer with its lawyers confidentially in order to obtain adequate advice, just as does a private citizen who seeks legal counsel, even though the scope of confidential meetings is limited by this state's public meeting requirements. (*Sacramento Newspaper Guild, supra,* 263 Cal.App.2d at p. 58; 2 Witkin, Cal. Evidence, *supra,* Witnesses § 1114, p. 1054.) The public interest is served by the privilege

---

[5]Appellant also asserts that because the city attorney has a duty to serve the public, she is the client of the city attorney as a member of the public and has the authority to waive the privilege. She cites no relevant authority for the proposition that each member of the entire public is the client of the city attorney, and we have found none.

because it permits local government agencies to seek advice that may prevent the agency from becoming embroiled in litigation, and it may permit the agency to avoid unnecessary controversy with various members of the public.

The balance between the competing interests in open government and effective administration of justice has been struck for local governing bodies in the Public Records Act and the Brown Act. We see no reason to disturb the equilibrium achieved by that legislation. We conclude that although the Brown Act limits the attorney-client privilege in the context of local governing body meetings, it does not purport to abrogate the privilege as to written legal advice transmitted from counsel to members of the local governing body.

### III

The judgment of the Court of Appeal is reversed.

Lucas, C. J., Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.