[No. G017633. Fourth Dist., Div. Three. Apr. 3, 2000.]

LESLIE R. SMITH et al., Plaintiffs and Appellants, v.
LAGUNA SUR VILLAS COMMUNITY ASSOCIATION, Defendant and
Respondent.

**COUNSEL**

Lee H. Durst and Nancy M. Padberg for Plaintiffs and Appellants.

Richard A. Tinnelly; Bruce R. Kermott; and Deborah Cameron Vian for Defendant and Respondent.

**OPINION**

**CROSBY, J.**—Condominium associations may bring construction defect lawsuits against developers without fear of having to disclose privileged

information to individual homeowners. Like closely held corporations and private trusts, the client is the entity that retained the attorney to act on its behalf.

## I

This litigation has its genesis in a construction defect action involving a 253-unit condominium project in the Laguna Sur development of the City of Laguna Niguel. The project was governed by the Laguna Sur Villas Community Association (Villas). Another group, the Laguna Sur Community Association (the Master Association), owned the development's open space.[1]

In June 1990, both associations jointly retained the law firm of Duke, Gerstel, Shearer & Bregante (Duke, Gerstel) to sue the developer. They split the legal fees and shared expenses for soils and structural experts.

The litigation proved to be more costly than anticipated and by August 1991 the fees exceeded $450,000. That fall the Villas' board of directors adopted an emergency assessment of $2,000 per unit. The assessment was imposed without polling the members.

A dissident group of Villas residents was upset by the "runaway budget for expenditures" and demanded to review Duke, Gerstel's work product and legal bills "within 15 days from their receipt by the Association or its representatives." Villas objected on the grounds of attorney-client and work product privileges.

Plaintiff Leslie R. Smith also made the same demand to Villas in his capacity as a board member. However, Smith served as a director of the Master Association, not Villas. He voluntarily resigned from the Master Association in June 1992.[2]

The dissidents sought to recall the Villas board members for fiscal mismanagement, but lost the recall vote. The Villas board thereafter recommended an additional special assessment of $4,000 per unit. This new assessment was ratified by a membership vote in 1993.

The dissidents responded with individual small claims actions against the Villas' directors to recover the amount of the 1991 and 1992 assessments.

---

[1] The two boards had two or three common members and occasionally met collectively for informal workshops, but otherwise maintained a separate legal existence.

[2] Smith erroneously pleaded that he was a Villas director in 1991 and 1992. He never sued the Master Association.

They separately sued Villas in superior court for declaratory and injunctive relief. Villas in turn sued them for abuse of process and declaratory relief. The actions were consolidated.

After trial, the court found the 1991 special assessment was valid; Villas held the attorney-client privilege; and Smith's inspection rights as a director were moot. Villas dismissed its damage claim for abuse of process. The court awarded attorney fees and costs to Villas as the prevailing party pursuant to Code of Civil Procedure section 1033.5 and Civil Code sections 1717 and 1354.

## II

The court correctly held Villas was the holder of the attorney-client privilege and that individual homeowners could not demand the production of privileged documents, except as allowed by the Villas board.

Villas brought the construction defect litigation on its own behalf. California law expressly permits a mutual benefit nonprofit corporation to "institute, defend, settle, or intervene in litigation . . . in its own name as the real party in interest and without joining with it the individual owners" in actions for damage to the common areas or for separate areas which it must repair or maintain. (Code Civ. Proc., § 383.) This represents a substantive change in previous case law which only accorded individual owners standing to sue. (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 792 [171 Cal.Rptr. 334].)[3]

Corporations have a separate legal identity and enjoy the benefit of the attorney-client privilege. (*Hoiles v. Superior Court* (1984) 157 Cal.App.3d 1192, 1198 [204 Cal.Rptr. 111].) Evidence Code section 951 defines a "client" as the "person" who "directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer . . . ." The term "person" includes a corporation (Evid. Code, § 175); indeed, it may

---

[3]Smith raises for the first time in his reply brief the purported impact of recent legislation (Civ. Code, § 1375, subd. (g)) requiring associations to provide notice to individual owners of rejected settlement offers by builders or of proposed civil actions by the association and to allow for a special meeting of the members to discuss the matter. Aside from the impropriety of raising issues for the first time by reply brief (*City of Costa Mesa v. Connell* (1999) 74 Cal.App.4th 188, 197 [87 Cal.Rptr.2d 612]), we fail to see the statute's relevance. Under the statute, for example, the notice requirements do not come into play when an association's board of directors *accepts* a developer's written settlement offer, or where it agrees to submit to alternative dispute resolution after meeting and conferring with the developer. (Civ. Code, § 1375, subds. (e)(3), (g) ["If the board of directors of the association rejects a settlement offer presented at the meeting . . . ."].)

extend to an unincorporated organization "when the organization (rather than its individual members) is the client." (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code (1995 ed.) foll. § 951, p. 207.) There is no statutory exception for shareholders, even for closely held entities, and courts are powerless to elaborate upon the legislative scheme. (*Dickerson v. Superior Court* (1982) 135 Cal.App.3d 93, 99 [185 Cal.Rptr. 97].)

■■ Although appellants, as condominium owners, were members of Villas, they were not individually named as plaintiffs in the construction defect litigation. Because they did not consult with or retain the Duke, Gerstel law firm, they do not fit within the joint-client exception of Evidence Code section 962. (*Hoiles v. Superior Court, supra,* 157 Cal.App.3d at p. 1199, fn. 4; see also *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 212 [91 Cal.Rptr.2d 716, 990 P.2d 591] ["no such [joint client] relationship is implied in law"].)

Appellants argue they were the "true clients" of Duke, Gerstel rather than Villas, a "faceless" association which could only act in a "representative" capacity of the general membership. They contend Villas owed them a fiduciary duty to act in their best interests as "the rightful owners who are paying with their assessments for the legal services being rendered on their behalf." They characterize as the "crux" of the matter the question: "For whose benefit is the lawsuit being brought?"

We have squarely rejected this equation between beneficiaries and allegedly true clients. In *Hoiles v. Superior Court, supra,* 157 Cal.App.3d 1192, we held that only closely held corporations, not minority shareholders, were the client of the corporation's attorney even though the corporate board members owed fiduciary duties to the complaining shareholders. In *Shannon v. Superior Court* (1990) 217 Cal.App.3d 986 [266 Cal.Rptr. 242], another court held a receiver could assert an absolute attorney-client privilege as to communications with his counsel even as to a disclosure request by the corporation which was placed into receivership and to which he owed fiduciary responsibilities.

Most recently, in *Wells Fargo Bank v. Superior Court, supra,* 22 Cal.4th 201, 209, the Supreme Court refused to create a so-called "fiduciary" exception to the attorney-client privilege because courts "do not enjoy the freedom to restrict California's statutory attorney-client privilege based on notions of policy or ad hoc justification." In *Wells Fargo* the beneficiaries of a trust sought to discover confidential communications between the trustee

(a bank) and outside trust counsel. Like appellants, the beneficiaries contended the trustees owed independent duties to provide them with complete and accurate information regarding the trust administration and to allow them to inspect books and documents. All to no avail, for the court declined to allow such responsibilities to trump the statutorily-created attorney-client privilege: "Certainly a trustee can keep beneficiaries 'reasonably informed' [citation] and provide 'a report of information' [citation] without necessarily having to disclose privileged communications. . . . If the Legislature had intended to restrict a privilege of this importance, it would likely have declared that intention unmistakably, rather than leaving it to courts to find the restriction by inference and guesswork . . . ." (*Id.* at p. 207.) *Wells Fargo* held that the attorneys only represented the trustees, not the beneficiaries.

The Supreme Court was not persuaded to the contrary because the beneficiaries were indirectly paying attorney fees which came out of the trust. That is because "[p]ayment of fees does not determine ownership of the attorney-client privilege. . . . In any event, the assumption that payment of legal fees by the trust is equivalent to direct payments by beneficiaries is of dubious validity. . . . [T]his question of cost allocation does not affect ownership of the attorney-client privilege." (*Well Fargo Bank v. Superior Court, supra*, 22 Cal.4th at p. 213.)

Here, too, appellants did not individually arrange to pay their proportionate fees of the Duke, Gerstel legal fees; instead, the fees were billed to and paid by Villas, which drew its funds from the member assessments. As in *Wells Fargo*, such indirect payments do not suffice to create an attorney-client relationship.

It is no secret that crowds cannot keep them. Unlike directors, the residents owed no fiduciary duties to one another and may have been willing to waive or breach the attorney-client privilege for reasons unrelated to the best interests of the association. Some residents may have had no defects in their units or may have had familial, personal or professional relationships with the defendants. Indeed, it is likely that the developer in the underlying litigation itself may have owned one or more unsold units within the complex. As Villas points out, "[o]ne can only imagine the sleepless nights an attorney and the Board of Directors may incur if privileged information is placed in the hands of hundreds of homeowners who may not all have the same goals in mind." With the privilege restricted to an association's board of directors, this is one worry, at least, that their lawyers can put to rest.

### III

As an alternative to their rights as homeowners, appellants argue that Smith and another individual, Hunter Wilson, were entitled to copies of the

billing documents in the construction defect litigation in their separate capacity as directors and that their written demands to view the "attorney bills, reports and documents" were ignored.

We provided a "short answer" to a similar claim in *Hoiles v. Superior Court, supra,* 157 Cal.App.3d at page 1201. We do so again. No such claim is contained in the complaint. Appellants' contention is meritorious in the abstract since directors do have the right to request privileged information in their capacity as fiduciaries. However, it is specious in the particular. Neither Smith nor Wilson was a director of the association they sued. They were directors of the Master Association, not Villas. As counsel pointed out to the court: "Mr. Smith is trying to seek . . . rights of inspection by suing Laguna Sur Villas. It is a separate and distinct corporation which he never sat on as a director . . . ."[4]

Appellants make a meritless argument that the two associations "operated as one in the . . . construction defect litigation" and shared legal expenses. That is a non sequitur. There was no attempt to establish that the two associations were alter egos of one another, and each maintained a separate legal existence.

Moreover, as the trial court observed, Smith's rights (if any) as a director of either association ceased when his term expired in 1992. In *Chantiles v. Lake Forest II Master Homeowners Assn.* (1995) 37 Cal.App.4th 914, 920 [45 Cal.Rptr.2d 1], we acknowledged the rule that " 'the right of a director [of a nonprofit corporation] to inspect the books and records of the corporation ceases on his removal as a director, by whatever lawful means[.]' " This issue was thus moot even before the time of trial, and Smith had no reason to pursue it here.

## IV

Appellants question the 1991 emergency assessment because "there was no emergency . . . ." The court, however, ruled that appellants had failed to prove this contention "without the actual documentation" that Villas had adequate cash reserves to pay for consultants and repairs to the damaged common property.

That failure of proof manifests itself here as well. If there is a legal argument disguised somewhere in appellants' briefs, it is too well hidden for

---

[4]Appellants also tell us that "Abel Armas" was a board member of the Villas Association and that he, too, futilely made inspection requests of his fellow Villas board members. But Armas is not a party to the instant lawsuit, and there is no record he made any requests for documents.

us. ▮ Appellants have not affirmatively established error to overcome the presumption in favor of the ruling below. (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971 [33 Cal.Rptr.2d 812].)

The judgment, including the fee award to respondent as prevailing party, is affirmed. Costs on appeal, including reasonable attorney fees to be assessed by the superior court, are awarded to respondent.

Sills, P. J., and Rylaarsdam, J., concurred.