See also 172 F.Supp.2d 636.

**Receiver Joanne E. BOZZUTO, as Third Successor Receiver to Marina Pacifica Oil Company, Inc.**

v.

**COX, CASTLE & NICHOLSON LLP, et al.**

**No. CV 08–5113–FMC(RCx).**

United States District Court, C.D. California.

Feb. 4, 2009.

Kenneth P. White, Vivian R. Anaya, Los Angeles, CA, for Plaintiff.

Robert A. Meyer, Los Angeles, CA, for Defendant.

Paul M. Porter, Los Angeles, CA, for Real Party in Interest.

## PROCEEDINGS: ORDER DENYING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

ROSALYN M. CHAPMAN, United States Magistrate Judge.

On January 12, 2009, real party in interest William Lansdale filed a notice of appearance and the parties and Lansdale filed a joint stipulation regarding plaintiff's motion to compel production of documents and a joint appendix of exhibits in support of the joint stipulation, including the declarations of Kenneth P. White, Lawrence Teplin, Paul M. Porter and Rufus V. Rhoades. On January 20, 2009, plaintiff filed a supplemental memorandum. Oral argument was held before Magistrate Judge Rosalyn M. Chapman on February 4, 2009.

### BACKGROUND

#### I

On August 6, 2008,[1] plaintiff receiver Joanne E. Bozzuto, as third successor receiver to Marina Pacifica Oil Company ("MPOC"), filed a civil complaint based on diversity of citizenship jurisdiction against defendants Cox, Castle & Nicholson LLP ("Cox Castle"), Lawrence Teplin, Robert G. Campbell and Does 1 through 10, setting forth causes of action for breach of fiduciary duty, professional negligence and declaratory relief. Among other things, plaintiff seeks

---

1. Plaintiff filed an initial complaint on August 5, 2008, and a corrected complaint on August 6, 2008.

exemplary and punitive damages, "disgorgement of all funds paid or held on behalf of MPOC[,]" and a declaratory judgment:

   a.  That the RECEIVER, as the sole authorized representative of MPOC during all times relevant to this case, is entitled to all documents of any kind generated or received by DEFENDANTS in the course of their purported representation of MPOC; and

   b.  That DEFENDANTS may not withhold such documents from the RECEIVER on the grounds of a privilege existing between Lansdale and DEFENDANTS, as Lansdale was acting, at best, in a representative capacity for MPOC.

Complaint at pp. 18–19.

Common to all causes of action, plaintiff alleges that on November 20, 2002, the United States District Court for the Virgin Islands ("District Court") appointed her third successor receiver over Lonesome Dove and its predecessor companies, MPOC and La Isla Virgen, Inc., to identify Lonesome Dove's assets in order to pay substantial income taxes owed by Lansdale to the Virgin Islands Bureau of Internal Revenue. Complaint ¶¶ 1–14, Exhs. A–B; *see also Gov't of Virgin Islands v. Lansdale,* 172 F.Supp.2d 636 (D.Vi.2001). On July 28, 2006, the District Court "issued an order prohibiting Lansdale and his agents from conducting any activities on behalf of or in the name of the corporations in receivership, including MPOC[, and] ... DEFENDANTS were actually and fully aware of this order." Complaint ¶¶ 15–17, Exhs. C–F. Nevertheless, when Marina Pacifica Homeowners Association ("MPHOA") filed a complaint against MPOC on November 3, 2006, in Los Angeles Superior Court ("Superior Court action"), "DEFENDANTS filed an answer to the complaint[,] ... filed an affidavit" to disqualify the judge, and "also appeared at several court hearings purporting to representing MPOC, issued discovery demands on behalf of MPOC, and negotiated with MPHOA on behalf of MPOC." Complaint ¶¶ 18–22. "In

purporting to represent MPOC ..., DEFENDANTS were not actually acting on MPOC's behalf, or in MPOC's best interests, or to preserve MPOC's assets, and were not pursuing their obligation to act as vigorous advocates and attorneys for MPOC. Rather, DEFENDANTS were actually representing the interests of their other client, Lansdale, and working to advance his plan to evade taxation and conceal assets." Complaint ¶¶ 23–26.

After plaintiff discovered defendants' purported representation of MPOC, she filed an ex parte application to disqualify defendants from representing MPOC, and on June 14, 2007, defendants executed a substitution of attorney withdrawing as counsel for MPOC in the Superior Court action. Complaint ¶¶ 27–32. "After DEFENDANTS signed the substitution of counsel, ..., they refused to turn over and continue to refuse to turn over ... the complete original files ... which [plaintiff] needed to assess the matter and defend" MPOC in the Superior Court action,[2] claiming the documents are privileged. Complaint ¶¶ 33–35. "DEFENDANTS' actions proximately caused MPOC (as represented by [plaintiff]) to incur substantial and unjustified expenses ... and delayed MPOC's efforts through [plaintiff] to identify and marshal its assets...." Complaint ¶ 36.

On December 11, 2008, District Judge Florence–Marie Cooper granted the parties' stipulation for dismissal with prejudice of this action, but "retain[ed] jurisdiction to enforce the terms" of the parties' settlement and "to resolve the Parties' dispute concerning Plaintiff's right to obtain certain documents which Defendants have withheld on the basis of attorney-client privilege and the work product doctrine (the subject of Plaintiff's Third Claim for Relief (declaratory relief) in this action)." Further, Judge Cooper afforded Lansdale the opportunity "to participate (by way of intervention or otherwise) in any opposition to [plaintiff's discovery] motion as the claimed holder of the subject attorney-client privilege."

---

2. The Superior Court action has since been dismissed against MPOC. Declaration of Paul M.

Porter ("Porter Decl.") ¶ 9, Exhs. U–V.

## DISCUSSION

■ In a federal action such as this based on diversity of citizenship jurisdiction, state law governs privilege claims. Fed. R.Evid. 501; *Star Editorial, Inc. v. United States District Court for the Central District of California (Dangerfield),* 7 F.3d 856, 859 (9th Cir.1993); *Oakes v. Halvorsen Marine Ltd.,* 179 F.R.D. 281, 284 (C.D.Cal.1998). Under California law, "[a]s proposed by the California Law Revision Commission ... and subsequently enacted by the [California] Legislature in 1965, the Evidence Code declares authoritatively that evidentiary privileges such as the attorney-client privilege are governed by statute." *HLC Props., Ltd. v. Superior Court,* 35 Cal.4th 54, 59, 24 Cal. Rptr.3d 199, 202, 105 P.3d 560 (2005) (footnote and citations omitted); *Moeller v. Superior Court,* 16 Cal.4th 1124, 1129, 69 Cal. Rptr.2d 317, 320, 947 P.2d 279 (1997); *see also* California Evidence Code ("Cal.Evid. Code") § 911 ("Except as otherwise provided by statute: ... (b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing....").

The attorney-client privilege attaches to "confidential communication between client and lawyer" during the course of the attorney-client relationship. Cal. Evid.Code § 952; *Moeller,* 16 Cal.4th at 1130, 69 Cal. Rptr.2d at 320, 947 P.2d 279; *Roberts v. City of Palmdale,* 5 Cal.4th 363, 371, 20 Cal. Rptr.2d 330, 333–34, 853 P.2d 496 (1993). "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar,* 54 Cal.3d 765, 779, 1 Cal.Rptr.2d 684, 691, 819 P.2d 424 (1991) (quoting Cal. Evid.Code § 952); *Roberts,* 5 Cal.4th at 371, 20 Cal. Rptr.2d at 334, 853 P.2d 496.

■ "The client may assert the privilege and refuse to disclose confidential communications as long as the client is the holder of the privilege." *Moeller,* 16 Cal.4th at 1130, 69 Cal.Rptr.2d at 320, 947 P.2d 279 (citing Cal. Evid.Code § 954); *HLC Properties, Ltd.,* 35 Cal.4th at 60–61, 24 Cal.Rptr.3d at 203, 105 P.3d 560. The client is "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining a lawyer or securing legal service or advice from him in his professional capacity...." Cal. Evid.Code § 951; *see also Hyon v. Selten,* 152 Cal.App.4th 463, 469, 60 Cal.Rptr.3d 896, 901 (2007) ("By including 'authorized representative' in the definition of 'client,' the statute extends the [attorney-client] privilege to cover not only communications directly between the client and the attorney but also communications between the client's agents and the attorney.").

■ The party asserting the privilege bears the initial burden of demonstrating the communication falls within the privilege. *Wellpoint Health Networks, Inc. v. Superior Court,* 59 Cal.App.4th 110, 123, 68 Cal. Rptr.2d 844, 852 (1997); *State Farm Fire & Cas. Co. v. Superior Court,* 54 Cal.App.4th 625, 639, 62 Cal.Rptr.2d 834, 843–44 (1997). Once an attorney-client relationship has been established, however, communications between attorney and client are presumed to be in confidence, and the party opposing the privilege bears the burden of proving the communication was not in confidence. Cal. Evid.Code § 917; *State Farm Fire & Cas. Co.,* 54 Cal.App.4th at 639, 62 Cal.Rptr.2d 834.

The attorney-client privilege is grounded in public policy considerations and "is in furtherance of the proper and orderly functioning of our judicial system, which necessarily depends on the confidential relationship between the attorney and the client." *People v. Gionis,* 9 Cal.4th 1196, 1207, 40 Cal.Rptr.2d 456, 461–62, 892 P.2d 1199 (1995); *People v. Velasquez,* 192 Cal.App.3d 319, 327, 237 Cal. Rptr. 366, 370 (1987). In enacting the attorney-client privilege, the California Legislature recognized "'the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.'" *Mitchell v. Superior Court,* 37 Cal.3d 591, 600, 208 Cal.Rptr. 886, 890, 691 P.2d 642 (1984) (citations omitted); *2,022 Ranch, L.L.C. v. Superior Court,* 113 Cal.App.4th 1377, 1388, 7 Cal.Rptr.3d 197, 205 (2003).

■ Unlike the attorney-client privilege, the application of the work product doctrine in diversity of citizenship cases is determined under federal law. *Frontier Refining, Inc. v. Gorman–Rupp, Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir.1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir.1988). Under the work product doctrine, material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509–12, 67 S.Ct. 385, 392–94, 91 L.Ed. 451 (1947). The work product doctrine establishes a qualified immunity, rather than a privilege, and the qualification of the immunity is to be determined upon a showing of necessity or good cause. *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir.1989); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D., 186, 192 (C.D.Cal.2006); *see also United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) ("The privilege derived from the work-product doctrine is not absolute."). The party claiming work product immunity has the burden of proving the applicability of the doctrine. *A. Farber & Partners, Inc.*, 234 F.R.D. at 192; *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 644 (C.D.Cal.2005).

■ Rule 26(b) provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must: (1) expressly make the claim; and (2) describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A). One method of expressly claiming attorney-client privilege or work product protection is a document-by-document privilege log. *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir.1992); *Dole v. Milonas*, 889 F.2d 885, 890 (9th Cir.1989). Here, defendants and Lansdale assert attorney-client privilege and the work product doctrine to protect 90 documents on defendant Cox Castle's privilege log,[3] covering the period of July 17, 2003, through June 27, 2007, as well as an undated document. Declaration of Kenneth P. White ("White Decl.") ¶ 14, Exh. M. Plaintiff seeks to compel production of only 35 documents generated during the period the Superior Court action was pending, from November 8, 2006, through June 14, 2007. Jt. Stip. at 5:10–12, 17:10–22:2. Generally, these documents are either letters, e-mails or faxes from either Lawrence Teplin to Rufus V. Rhoades, Robert Campbell, or Lansdale or from Mr. Rhoades or Mr. Campbell to Mr. Teplin. At all times, Mr. Teplin was a partner in Cox Castle, Declaration of Lawrence Teplin ("Teplin Decl.") ¶ 1, and Mr. Rhoades was Lansdale's "primary representative in connection with his legal affairs." Declaration of Rufus V. Rhoades ("Rhoades Decl.") ¶ 2; Porter Decl. ¶ 3. The plaintiff alleges that Robert Campbell is Senior Counsel at Cox Castle, Complaint ¶ 4, and defendants and Lansdale do not dispute this allegation.

■ Plaintiff claims that since MPOC was Cox Castle's purported client, plaintiff is entitled to the documents she seeks. However, the declarations of Messrs. White, Teplin, Porter and Rhoades establish that Mr. Rhoades was Mr. Lansdale's "authorized representative," and, as such, he hired defendants Cox Castle, Teplin and Campbell to represent Mr. Lansdale, not MPOC. Thus, an attorney-client relationship existed between Mr. Lansdale and defendant Cox Castle and its attorneys, defendants Teplin and Campbell, and all communications between Mr. Lansdale (or Mr. Rhoades) and defendants Cox Castle, Teplin and Campbell relating to the Superior Court action come within the attorney-client privilege and are protected from disclosure to plaintiff. Cal. Evid.Code §§ 951–952. There was never an attorney-client relationship between MPOC (or plaintiff) and defendants Cox Castle, Teplin and Campbell. *See Smith v. Laguna Sur Villas Cmty. Assoc.*, 79 Cal.App.4th 639, 644, 94 Cal.Rptr.2d 321, 323–24 (2000) (no attorney-

---

**3.** For purposes of this discussion, the Court assumes all documents are properly on the privilege log as attorney-client privilege or work product or both.

client relationship when appellants "did not consult with or retain the ... law firm"). These determinations are based on the following facts established by the declarations: "Lansdale retained Cox Castle to defend him in a suit ... filed by [MPHOA] in 2006 in the Superior Court of Los Angeles." Teplin Decl. ¶ 2; Rhoades Decl. ¶¶ 3, 6. At the time, Mr. Teplin "was handling ... an ongoing dispute and litigation with the MPHOA which was pending...." Teplin Decl. ¶ 3. "Both cases were handled for [MPHOA] by John Oakes[, who] asked [Mr. Teplin] to accept service for the defendants in the [Superior Court action]...."[4] *Id.* In connection with the Superior Court action, Mr. Teplin corresponded with "Mr. Lansdale (and his attorney Rufus Rhoades), [and] generated work product ... on Mr. Lansdale's behalf...." *Id.* ¶ 4; *see also* Rhoades Decl. ¶ 6 ("Throughout the litigation, I corresponded and discussed the case with the Cox Castle attorneys, and worked with them in the effort on Mr. Lansdales [sic] behalf, and at all times did so with the understanding that Cox Castle had been retained by, and was acting on behalf of, Mr. Lansdale in his effort to protect his lease interest."). "Mr. Lansdale, not MPOC, paid Cox Castle for its services." Teplin Decl. ¶ 4; Rhoades Decl. ¶ 7. "At no time did [Mr. Teplin] or anyone at Cox Castle ever communicate with [plaintiff] for MPOC[ ] as its client or for any other reason related to the [Superior Court action] or claim." Teplin Decl. ¶ 4.

Since there was no attorney-client relationship between MPOC and defendant Cox Castle, plaintiff's arguments fail. *Smith,* 79 Cal.App.4th at 643–44, 94 Cal. Rptr.2d at 323–24. This is equally true of those few documents on the privilege log that are listed solely as work product, which were created because of the Superior Court action and are, thus, work product. *Newport Pacific, Inc. v. County of San Diego,* 200 F.R.D. 628, 632–33 (C.D.Cal.2001). The holder of the work product immunity includes the at-

torney who prepared the work, *Doubleday v. Ruh,* 149 F.R.D. 601, 606 n. 5 (E.D.Cal.1993); therefore, defendants may protect the work product documents, and since plaintiff has not, and cannot, show a "substantial need for the materials to prepare its case...." Fed. R.Civ.P. 26(b)(3). Thus, the Court must deny plaintiff's motion to compel production of documents on defendant Cox Castle's privilege log.[5]

### ORDER

Plaintiff's motion to compel the production documents on defendant Cox Castle's privilege log is denied.

---

4. Mr. Teplin claims his appearance in the Superior Court action on behalf of MPOC was due to an error in the complaint naming MPOC as defendant, when MPOC "had no interest in the subject lease.... [Rather,] Mr. Lansdale was the lessee under that lease." Teplin Decl. ¶¶ 2, 6.

5. Since the Court can resolve plaintiff's claims without reaching defendants' defense of judicial estoppel, the Court declines to address that claim.