BILL LOCKYER Attorney General MARJORIE E. COX Deputy Attorney General
THE DEPARTMENT OF MANAGED HEALTH CARE has requested an opinion on the following questions:
1. Are the meetings of the Clinical Advisory Panel within the Department of Managed Health Care subject to the requirements of the Bagley-Keene Open Meeting Act?
2. If so, may the Clinical Advisory Panel meet in closed session when it obtains and reviews information and findings arising from the independent medical review system?
 CONCLUSIONS
1. The meetings of the Clinical Advisory Panel within the Department of Managed health Care are subject to the requirements of the Bagley-Keene Open Meeting Act.
2. The Clinical Advisory Panel may not meet in closed session when it obtains and reviews information and findings arising from the independent medical review system.
 ANALYSIS
Effective July 1, 2001, the Legislature established the Department of Managed Health Care ("Department"), making it responsible for administering the Knox-Keene Health Care Service Plan Act of 1975 (Health Saf. Code, §§ 1340-1399.818; "KnoxKeene Act").[1] One of the Department's chief purposes is to "ensure that health care service plans provide enrollees with access to quality health care services and protect and promote the interests of enrollees." (§ 1341, subd. (a).) To assist the Department in achieving this goal, at the same time that it created the Department, the Legislature amended the KnoxKeene Act to include a procedure for challenging certain types of decisions made by health care service plans and medical providers. (§§1374.30-1374.36.)
Known as the independent medical review ("IMR") system, this procedure allows health care service plan enrollees to seek outside review of a decision by their plan, or one of its providers, to deny, modify or delay a covered health care service or to deny reimbursement for an emergency or urgent medical service when based on a finding that the service is, or was, not "medically necessary." (§ 1374.30, subds. (b), (j).) In addition, an enrollee suffering from a life-threatening or seriously debilitating condition may obtain independent review of a decision to deny a covered service when the denial is based upon the ground that it is "experimental or investigational." (§ 1370.4, subds. (a), (b).)[2]
To utilize the IMR system, an enrollee files an application with the Department, which the Department then forwards to one of the IMR organizations it has selected to conduct outside reviews. (§§1374.30, subds. (j), (n), 1374.32.) On receipt of the relevant medical records, the IMR organization assigns the case to one or more appropriately credentialed medical professionals for review, each of whom is required to provide the organization with a written determination, generally within 30 days, regarding the medical necessity of the disputed health care service. (§§ 1370.4, subd. (c)(3), 1374.33, subds. (a)-(d).)[3]
To ensure that the IMR system fulfills its statutory purpose, the Legislature has established a Clinical Advisory Panel within the Department to review the decisions arising out of the system and to advise the Department on improvements that may be needed. Section1347.1 states:
 "There is established in the department a Clinical Advisory Panel consisting of five members appointed by the director. These members shall be professors of medicine from California's public and private medical schools and, additionally, two of the members shall be practicing physicians. The purpose of the advisory panel shall be to provide expert assistance to the director in ensuring that the external independent review system is meeting the quality standards necessary to protect the public's interest. . . . The panel shall review the decisions made in external review to ensure that the decisions are consistent with best practices and make recommendations for improvements where necessary. The panel shall meet quarterly and shall have staff provided as necessary."
We are asked whether the meetings of the Department's Clinical Advisory Panel must be open to the public, and if so, whether the Clinical Advisory Panel may meet in closed session when it discusses individual IMR system cases.
1. Applicability of the Bagley-Keene Open Meeting Act
The first issue to be addressed is whether the Clinical Advisory Panel is subject to the requirements of the Bagley-Keene Open Meeting Act (Gov. Code, §§ 11120-11132; "Act"). We conclude that it is.
The Act generally requires that "[a]ll meetings of a state body shall be open and public and all persons shall be permitted to attend any meeting of a state body except as otherwise provided in this article." (Gov. Code, § 11123, subd. (a).) Its purpose is to allow the public to attend, observe, monitor, and participate as fully as possible in the decision-making process of state bodies. (Gov. Code, §§11120, 11122, 11122.5.)
The general scope of the Act is as follows: "Each provision of this article shall apply to every state body unless the body is specifically excepted from that provision by law or is covered by any other conflicting provision of law." (Gov. Code, § 11127.) The critical statute requiring our interpretation is Government Code section11121, which defines the term "state body." It provides:
 "As used in this article, "state body' means each of the following:
 "(a) Every state board, or commission, or similar multimember body of the state that is created by statute or required by law to conduct official meetings and every commission created by executive order.
 "(b) Any board, commission, committee, or similar multimember body that exercises any authority of a state body delegated to it by that state body.
 "(c) Any advisory board, advisory commission, advisory committee, advisory subcommittee, or similar multimember advisory body of a state body, if created by formal action of the state body or of any member of the state body, and if the advisory body so created consists of three or more persons.
 "(d) Any board, commission, committee, or similar multimember body on which a member of a body that is a state body pursuant to this section serves in his or her official capacity as a representative of that state body and which . . . is supported, in whole or in part, by funds provided by the state body, whether the multimember body is organized and operated by the state body or by a private corporation."
The Clinical Advisory Panel more than meets the definition of "state body" set forth in Government Code section 11121, subdivision (a). It has five members; it was established by statutory command of the Legislature; and it is expressly required to meet at least quarterly. (§ 1347.1.) Thus, the panel is subject to the Act's generally applicable open meeting requirements.
We reject the suggestion that the Clinical Advisory Panel does not qualify as a "state body" because it is not "similar" to a "state board or commission." True, its role is a limited one. The panel's purpose is "to provide expert assistance" to the Department "in ensuring that the [IMR] system is meeting the quality standards necessary to protect the public's interest." It fulfills this function by "review[ing] the decisions made" by the IMR organizations "to ensure that the decisions are consistent with best practices" and by "mak[ing] recommendations for improvements where necessary." (§ 1347.1.)
There are, however, numerous statutorily created "state boards and commissions" to which the Legislature has similarly assigned only investigatory or advisory roles. These include, for example, the California Commission on the Status of Women, which was created to study the social, economic and legal status of women in California with a view towards "develop[ing] recommendations which will enable women to make the maximum contribution to society" and "reporting" these "to the Legislature" (Gov. Code, §§ 8240, 8245), and the California Commission on Aging, the principal advisory body to the Governor and Legislature on issues affecting older Californians (see Welf. Inst. Code, §§ 9200-9206). We have long recognized that, irrespective of their limited functions, such "state boards and commissions" are subject to the Act's open meeting requirements. (68 Ops. Cal. Atty. Gen. 65, 66 (1985); 65 Ops. Cal. Atty. Gen. 638, 639 (1982).)
We can perceive no basis for reaching a contrary conclusion about the Clinical Advisory Panel. Even advisory committees created by state bodies, rather than by statute, are subject to the Act's requirements. (Gov. Code, § 11121, subd. (c).)
In answer to the first question, therefore, we conclude that the meetings of the Clinical Advisory Panel are subject to the Act's open meeting requirements.
2. Authority To Hold Closed Sessions
We next consider whether the Clinical Advisory Panel may meet in closed session when it obtains and reviews information regarding particular IMR system cases. We conclude that the panel may not do so.
Government Code section 11126 authorizes state bodies to meet in closed session for certain purposes. To the extent any of these authorizations apply to the work of the Clinical Advisory Panel, it too may meet in closed session. However, the statute contains no provision authorizing the panel to meet in closed session for the purposes in question.[4]
It is suggested that, despite this lack of express authorization in the Act, authority for the Clinical Advisory Panel to meet in closed session may be inferred from provisions of the California Public Records Act (Gov. Code, §§ 6250-6276.48). While the latter statutory scheme generally requires that public records be made available for inspection and copying (Gov. Code, § 6253), "personnel, medical, and other similar files, the disclosure of which would constitute an unwarranted invasion of privacy" are exempt from this requirement. (Gov. Code, § 6254, subd. (c); see generally Braun v. City of Taft (1984) 154 Cal.App.3d 332.)
There may have been a time when this argument would have been persuasive. However, effective January 1, 1988, the Legislature amended the Act to provide, in unequivocal terms, that closed sessions may be held only as directly authorized by the Legislature. Government Code section 11132 now specifically states: "Except as expressly authorized by this article, no closed session may be held by any state body." Accordingly, authority to hold a closed session may not be inferred from provisions of the California Public Records Act.
Finally, we note that the Clinical Advisory Panel has other means of maintaining the confidentiality of information concerning enrollees who utilize the IMR system. The various records the panel must review may be mailed to the panel's members and examined by them in advance of their meeting. (See Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 373-377; Frazer v. Dixon Unified School Dist. (1993) 18 Cal.App.4th 781, 794-798.) Moreover, cases may be discussed without identifying the parties involved. In any event, we are not at liberty to rewrite the Act; only the Legislature may exercise that power. (California State University, Fresno Assn., Inc. v. Superior Court (2001) 90 Cal.App.4th 810, 830.)
We conclude, in answer to the second question, that the Clinical Advisory Panel may not meet in closed session when it obtains and reviews information and findings arising from the IMR system.
[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.
[2] A similar system is available to persons insured under disability insurance policies. (See Ins. Code, §§ 10169-10169.5) We are advised that the Department of Insurance administers this program but, pursuant an interagency agreement with the Department, uses the Department's outside contractors to conduct the reviews.
[3] The cost of the review is covered by fees charged health care service plans by the Department; an is not charged for the review. (§§ 1374.32,1374.35.)
[4] When the Legislature wants to provide authority for a state body to meet in closed session for a particular purpose, it typically does so either by appropriate amendment to Government Code section 11126 or by enacting an independent statutory provision expressly providing the body with this authority. (See, e.g., Bus. Prof. Code, §§1696, 2353, 2664, subd. (c), 2770.10, 3534.2, subd. (c), 4869 [authorizing certain diversion evaluation committees to convene in closed session "to the extent. . . necessary to protect the privacy" of applicants to, or participants in, diversion programs]). Here, the Legislature has done neither.