131 Cal.Rptr.2d 313 (2003)
106 Cal.App.4th 993
The PEOPLE, Plaintiff and Respondent,
v.
Alex SALINAS, Defendant and Appellant.
No. F038894.
Court of Appeal, Fifth District.
March 5, 2003.
As Modified March 18, 2003.
Review Granted May 21, 2003.
*314 Donal M. Hill, San Diego, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous, Deputy Attorneys General, for Plaintiff and Respondent.
Certified For Partial Publication.[*]

OPINION
WISEMAN, J.

PROCEDURAL HISTORY
Alex Salinas (appellant) was charged in an amended information on January 18, 2001, with the following felony offenses: count 1, residential burglary (Pen.Code, §§ 459-60);[1] count 2, assault by means likely to produce great bodily injury (§ 245, subd. (a)); count 3, communicating terrorist threats (§ 422); count 4, dissuading a witness (§ 136.1, subd. (c)); count 5, battery with serious bodily injury (§ 243, subd. (d)); and count 6, corporal injury to a spouse/cohabitant (§ 273.5, subd. (a)).
Appellant entered not guilty pleas to the charges and jury trial began. Subsequently, counts 1, 2 and 4.were dismissed. Appellant was found guilty of count 6, corporal injury to a spouse/cohabitant, and not guilty of count 3, communicating terrorist threats, and count 5, battery with serious bodily injury.
Appellant was sentenced to two years in state prison and ordered to pay a restitution fine of $200 under section 1202.4, and a restitution fine of $200 pursuant to section 1202.45 was suspended. The court also imposed a $200 assessment to the Domestic Violence Fund under section 1203.097.

FACTUAL HISTORY
Kendra Verduzco and appellant began dating in late May or early June 2000 and began living together in her apartment beginning in June. The relationship ended in late September, and Verduzco was then pregnant with appellant's child. Appellant became involved with Marisela Cuevas and moved in with her almost immediately.
On the evening of October 15, 2000, Verduzco went to the fair and returned home around 1:45 a.m. Shortly after she went to bed, appellant entered her apartment by breaking one of the bedroom windows in an effort to obtain some papers verifying that Verduzco was pregnant. Cuevas followed appellant into the apartment.
Appellant entered Verduzco's bedroom and began to strike her. When she fled the room, he grabbed her hair and dragged her back. Appellant hit Verduzco *315 many times in the head and right ear with a closed fist and threw his shoulder and body weight into the punches. Verduzco became dizzy and blacked out. Appellant told Verduzco that if she did not find the paperwork he wanted, the lumps and pain she felt on her head would soon be felt on her stomach.
When appellant and Cuevas left, Verduzco called 911 to report the incident. She made a statement to the reporting officer about the attack. While the officer was with Verduzco, she received approximately six phone calls. In one call, a male voice Verduzco identified as appellant was heard to say, "I wasn't hitting you in the stomach, I only hit you in the head."
At the subsequent preliminary hearing, Verduzco described appellant's attack on her in similar terms to what she had reported earlier to the officer. Later, however, Verduzco's story changed. At trial, Verduzco testified she was still in love with appellant and wanted to pursue a relationship with him. Verduzco visited appellant while he was in jail, including Christmas Eve. She testified that her statement to the officer on the night of the incident and her testimony at the preliminary hearing were lies. Instead, Verduzco indicated that, although appellant and Cuevas did enter her apartment, Verduzco slapped appellant first before he slapped her in response. Verduzco told appellant and Cuevas to leave, which they did.
Although Verduzco admitted giving the officer a detailed description of the assault, she denied the details at trial. Verduzco testified she went to the hospital the morning after the incident due to ringing in her ears, which she told hospital personnel was because she had been slapped.
Cuevas testified after agreeing to a plea bargain in which charges against her were dismissed in exchange for a promise of truthful testimony. She and appellant went to Verduzco's apartment because appellant wanted some papers showing Verduzco was pregnant. Cuevas did not enter the apartment immediately after appellant entered, but could hear appellant and Verduzco arguing. Cuevas saw appellant grab Verduzco by the hair when Verduzco tried to go out the front door. She also saw appellant hit Verduzco at least twice on the side of her head.
An expert in the area of domestic violence testified generally concerning battered women's syndrome. He stated that it is very common for a domestic violence victim to recant an initial statement given to law enforcement and, generally, the first statement is truthful. Based on his experience, about 50 percent of all domestic violence victims recant. He opined that the victim's desire to reconcile with appellant after initially wanting prosecution of the case is consistent with this pattern.
Delia Zapata was called as a witness pursuant to Evidence Code section 1109. Zapata testified she had been married to appellant in July of 1999. At about midnight on July 6, 1999, appellant had been outside drinking alcohol with neighbors when she discovered her clothing was missing. Zapata went outside to ask appellant about her clothing. Appellant responded by cursing and grabbing her when she attempted to walk away. Appellant threatened to "stick" her, which she interpreted as a threat to stab her. The remark frightened Zapata, and she called the police.

Defense
A detective testified that when he contacted Verduzco three weeks after the incident, he saw no injuries. Cuevas was recalled and indicated that in her initial statement to officers, she described the *316 interaction between appellant and Verduzco as mutual "fighting."

DISCUSSION

1. Admission of evidence regarding battered women's syndrome
Appellant contends the expert testimony on battered women's syndrome (BWS) was improperly admitted because it was irrelevant absent a showing that the victim was a battered woman. Relying on People v. Humphrey (1996) 13 Cal.4th 1073, 1084, 56 Cal.Rptr.2d 142, 921 P.2d 1, People v. Gadlin (2000) 78 Cal.App.4th 587, 92 Cal.Rptr.2d 890, and People v. Gomez (1999) 72 Cal.App.4th 405, 85 Cal. Rptr.2d 101, appellant argues evidence of BWS requires, at a minimum, that Verduzco had been abused at least once before the current offense. In this case there is no evidence of any prior abuse to Verduzco. Absent this foundation, appellant argues the BWS evidence was improperly admitted. We disagree.
Evidence Code section 1107 makes BWS evidence admissible for a limited purpose. The statute provides:
"(a) In a criminal action, expert testimony is admissible by either the prosecution or the defense regarding battered women's syndrome, including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence, except when offered against a criminal defendant to prove the occurrence of the act or acts of abuse which form the basis of the criminal charge.
"(b) The foundation shall be sufficient for admission of this expert testimony if the proponent of the evidence establishes its relevancy and the proper qualifications of the expert witness. Expert opinion testimony on battered women's syndrome shall not be considered a new scientific technique whose reliability is unproven."
BWS evidence is admissible when there is "a contested issue as to which BWS testimony is probative. [Citation.]" (People v. Gadlin, supra, 78 Cal. App.4th at p. 592, 92 Cal.Rptr.2d 890; Evid.Code, § 1107.) BWS evidence can be used in a variety of ways, all within limits defined by the statute. The purpose of BWS evidence, similar to the purpose of other types of syndrome evidence, is to dispel many commonly held misconceptions about victims of domestic violence. (People v. Morgan (1997) 58 Cal.App.4th 1210, 1214, 68 Cal.Rptr.2d 772.) Here, the evidence was introduced for the limited purpose of providing the jury with an explanation for why Verduzco would recant at trial her earlier statements made to police and given at the preliminary hearing.[2]
There is no question that when Verduzco changed her testimony, her credibility was placed at issue. General testimony *317 by an expert on the tendency of domestic violence victims to recant is necessary to disabuse the jury of a commonly held misperception  that victims of crimes will not normally lie to protect the perpetrator. (People v. Williams (2000) 78 Cal. App.4th 1118, 1129, 93 Cal.Rptr.2d 356; People v. Morgan, supra, 58 Cal.App.4th at pp. 1215-1217, 68 Cal.Rptr.2d 772; People v. Gadlin, supra, 78 Cal.App.4th at p. 594, 92 Cal.Rptr.2d 890.) As the court in Williams and the expert testifying in Gomez noted, recanting is common even after a first incident and is not limited to cases in which abuse has extended over a significant period of time. (Williams, supra, at p. 1129, 93 Cal.Rptr.2d 356; Gomez, supra, 72 Cal.App.4th at p. 411, 85 Cal.Rptr.2d 101.)
In Gomez, supra, on which appellant relies, the Second District held that expert testimony of BWS is not relevant unless there is sufficient evidence that the victim is a battered woman. (People v. Gomez, supra, 72 Cal.App.4th at p. 407, 85 Cal. Rptr.2d 101.) In Gomez, there was no evidence, except for the current incident, to indicate the victim was a battered woman. (Id. at p. 416, 85 Cal.Rptr.2d 101.) Further, the rationale of Gomez was criticized by the Williams court. (People v. Williams, supra, 78 Cal.App.4th at p. 1129, 93 Cal.Rptr.2d 356.) After considering the reasoning of both cases, we find that Williams is correctly decided. As noted in Williams, the language of the statute does not require foundational evidence of previous abuse. Williams, supra, 78 Cal.App.4th at p. 1129, 93 Cal. Rptr.2d 356.) "There is nothing in Evidence Code section 1107 to suggest that the Legislature intended that a batterer get one free episode of domestic violence before admission of evidence to explain why a victim of domestic violence may make inconsistent statements about what occurred and why such a victim may return to the perpetrator." (Id. at p. 1129, 93 Cal.Rptr.2d 356.)
As noted in Williams, the result in Gomez is inconsistent with the testimony of the expert in that case, Gail Pincus. Pincus testified as follows:
"[A]bout 80 percent of the time a woman who has been `initially assaulted' by a boyfriend, husband or lover will recant, change or minimize her story. This recanting does not happen only after there has been a continuing pattern of abuse. In fact, depending on the severity of the incident, it is more likely to occur after a first incident. Pincus stated a woman will tend to minimize and deny the incident. The woman will engage in `selfblam[e]' and `sort of reconstruct ] th[e] incident, especially if th[e] relationship is going to continue. It's the most common [reaction] of anybody who's been victimized in an intimate relationship.'" (People v. Gomez, supra, 72 Cal.App.4th at pp. 411-412, 85 Cal.Rptr.2d 101, italics added.)
People v. Humphrey, supra, 13 Cal.4th 1073, 56 Cal.Rptr.2d 142, 921 P.2d 1, on which appellant also relies, cannot be used to support the conclusion appellant suggests. First, Humphrey did not decide whether BWS evidence could be admitted in the absence of evidence of prior abuse. Instead, Humphrey decided whether BWS evidence was relevant at all to a claim of self defense. (Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 372, 20 Cal.Rptr.2d 330, 853 P.2d 496 [cases are not authority for propositions they do not consider].)
Second, the use of BWS evidence in Humphrey is substantially different from its use here. In Humphrey, the evidence was used to prove the reasonableness of the defendant's claim of self defense, in light of her past history of abuse at the *318 hands of the victim. The defendant in Humphrey claimed the extended history of abuse led her to believe she was in imminent danger and needed to loll her husband in self defense. Whether this belief was reasonable was the issue presented to the jury and to which the BWS evidence was directed. (People y. Humphrey, supra, 13 Cal.4th at pp. 1088-1089, 56 Cal. Rptr.2d 142, 921 P.2d 1.)
Lastly, People v. Gadlin, supra, 78 Cal. App.4th 587, 92 Cal.Rptr.2d 890, on which appellant relies, is also not helpful. Gadlin, decided by another division of the Second Appellate District, upholds the admissibility of BWS evidence on the issue of victim credibility, but does not hold that a prior history of violence is a prerequisite to admission of such testimony. The victim and abuser in Gadlin had a two-and-one-half year troubled relationship with two distinct, well-corroborated incidents of armed assault, as well as the victim's assertion that the defendant constantly terrorized her and her children. (People v. Gadlin, supra, 78 Cal.App.4th at pp. 593-594, 92 Cal.Rptr.2d 890.)
Here, the focus was not on any past abuse and its impact on the victim's fear, but rather on why a victim might recant after being abused by an intimate partner. The trial court properly admitted evidence of BWS for that limited purpose.

II.-VI.[**]

DISPOSITION
The $200 fine imposed pursuant to section 1203.097 is ordered stricken. In all other respects, the judgment is affirmed.
We Concur: DIBIASO, Acting P.J, and BUCKLEY, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, only the Procedural and Factual Histories, part I of the Discussion, and the Disposition are certified for publication.
[1] All further statutory references will be to the Penal Code unless otherwise stated.
[2] The jury was instructed with CALJIC No. 9.35.1, which states: "Evidence has been presented to you concerning battered women's syndrome. This evidence is not received and must not be considered by you to prove the occurrence of the act or acts of abuse which form the basis of the crimes charged. [¶] Battered women's syndrome is based upon an approach which is completely different than the approach you must take in this case. The syndrome research begins with an assumption that physical abuse has occurred and seeks to describe and explain common reactions of women to that experience. As distinguished from that research approach, you are to presume the defendant innocent. The people have the burden of proving guilt beyond a reasonable doubt. [¶] You should consider the evidence for certain limited purposes only. Namely, that the alleged victim's reactions as demonstrated by the evidence are not inconsistent with her having been physically abused."
[**] See footnote *, ante.