Filed 7/17/15 The Oriental Misson Church v. Park CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE ORIENTAL MISSION CHURCH et al., | B256370 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC491914) |
| v. | |
| HYUNG JIM BOB PARK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Rolf M. Treu, Judge.  Affirmed.

Law Offices of Howard B. Kim and Howard B. Kim for Plaintiffs and Appellants.

Park & Sylva, Daniel E. Park, and Christopher C. Cianci for Defendants and Respondents.

The leadership of the Oriental Mission Church (OMC), a large Korean-American church, has been embroiled in internal strife for years, resulting in numerous lawsuits. Plaintiffs and appellants OMC and four church elders who were members of OMC's governing body—the "Session"—brought the current action against two of OMC's pastors and three church elders who also claimed to be members of the Session. Plaintiffs alleged that the Session properly terminated defendant pastors in accordance with the rules and procedures of OMC's constitution but that the pastors wrongfully refused to acknowledge their terminations and continued to act as pastors, actions which were detrimental to OMC. Plaintiffs further alleged that defendant elders were not Session members but acted as such, also to OMC's detriment. After a bifurcated bench trial, the court found that defendant pastors were not properly terminated and that defendant elders were valid members of the Session at the time plaintiffs filed this action on September 12, 2012. The court subsequently denied plaintiffs' motion for new trial.

Plaintiffs OMC and three of the four elders appeal from the judgment and order denying their motion for new trial. Plaintiffs contend the trial court erred in finding that the pastors were not properly terminated and that the defendant elders were valid members of the Session. They also contend the court abused its discretion by refusing to adjudicate the issue of plaintiff elders' Session membership. Plaintiffs further claim the court abused its discretion when it granted their motion to continue the trial but trailed the trial for only two days. Finally, plaintiffs contend the court abused its discretion by denying their motion for a new trial. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

### I. Factual Background

#### A. The Session and the Parties

OMC is a California non-profit religious corporation, incorporated in 1973. It is a congregational church governed by its articles of incorporation or "constitution."

According to OMC's constitution, the Session is the governing body of OMC and has authority to administrate and discipline. Its duties include monitoring finances,

2

managing assets, overseeing audits, managing personnel, and governing and administering church affairs. Pursuant to OMC's constitution, the members of the Session are the senior pastor, senior associate pastor, and active elders. Active elders are OMC members with specified qualifications who are selected by the Session, approved by congregational vote, and complete certain training.[1] Active elders serve a maximum term of three years on the Session and must retire at the age of 65.[2]

The Session essentially functions as OMC's board of directors. Nonetheless, a separate body called the "board of directors" exists within OMC's corporate structure.[3] However, it lacks the authority of the Session to govern church affairs.

In addition to OMC, plaintiffs are four active elders purporting to be members of the Session: Hong In Chai, Hubert Hyo Lee, Chang Woong Um, and Seoung Rae Lee (plaintiff elders). Defendants consist of OMC's senior pastor, Hyung Jim Bob Park (pastor Park), its associate pastor, Kyuong Rok Kim (pastor Kim), and three active elders: Young Song Lee,[4] Young Sik Jung,[5] and Kwang Suk An (defendant elders). Pastor Park

---

[1]    OMC's constitution provides for other categories of elders, but only active elders serve on the session.

[2]    While the constitution recommends one elder "per every thirty believers", there is no other limit to the number of active elders, and thus no limit to the number of Session members.

[3]    All OMC elders serve as members of the board of directors. Thus, active elders are members of both the Session and the board of directors, while elders of other types are members only of the board of directors. Perhaps due to the overlap of membership and/or to differences in translations from Korean to English, the documents in the record occasionally refer to the Session as the board of directors. This ambiguity does not create any substantive issue in this appeal.

[4]    Because Young Song Lee is a defendant in this action and was a plaintiff in an earlier action, described *post*, we refer to him when appropriate by his full name to avoid confusion with Hubert Hyo Lee and Seong Rae Lee, plaintiff elders in this case.

began serving as OMC's senior pastor in July 2011. Pastor Kim started serving as associate pastor in November 2011. Defendant elders commenced their terms on the Session between 2004 and 2007, but their Session memberships were disrupted as described below. They claim to have resumed their status as Session members beginning in or around June 2012.

### B.     Prior Relevant Proceedings

Two earlier lawsuits involving some of the same parties impact this case.

#### 1.     *The Kang Action*

In 2006, OMC's then-senior pastor, Choon Min Kang, dissolved the Session and replaced OMC's constitution with a new set of bylaws, effectively transferring control over church governance from the Session to himself. Defendant elders Young Song Lee, Jung, and An were members of the Session at the time Kang dissolved it. OMC and several Session members challenged Kang's actions in *Oriental Mission Church v. Kang*, Los Angeles Superior Court Case No. BC366406 (the Kang Action). On July 17, 2009, Judge Amy Hogue issued an amended statement of decision and judgment following bench trial in the Kang Action, of which the trial court took judicial notice. Judge Hogue found that Kang's attempt to dissolve the Session was invalid and that the new church bylaws were void.

Judge Hogue also restored members of the Session who had been removed, including defendant elders Lee, Jung, and An, and granted them time credits in the calculation of their remaining term limits and mandatory retirement age. Judge Hogue specifically held, "Plaintiffs and other Session members were removed from office on November 5, 2006 in violation of the Constitution and are hereby restored their positions as Session members. To reinstate the status quo as of November 4, 2006, the lapse of time between that date and the date of this order shall not be calculated against their terms or against any elder's mandatory retirement age of 65 . . . ."

---

[5]     Although defendant Jung filed an answer in pro. per, it is undisputed that he left OMC and subsequently abandoned his defense of this action.

4

## 2. *The Excommunication Action*

In 2010, the Session purported to terminate the membership of 18 members of OMC and suspend the offices of those terminated members who held leadership roles, including the role of elder. Defendant elders Jung and An, who had resumed Session membership following the Kang Action, were again removed from the Session. The terminated members continued to attend church meetings and functions, allegedly causing strife and dissension at OMC. The Session and its then members filed an action in Los Angeles Superior Court, *The Session of the Oriental Mission Church v. Rhee*, Case No. BC435913 (the Excommunication Action), against the allegedly terminated members, including defendant elders Jung and An.[6]

Judge Hogue conducted a bench trial and issued a judgment on May 29, 2012. The trial court took judicial notice of this judgment. Judge Hogue found that the 18 members—including defendants Jung and An—were terminated and their offices were suspended contrary to OMC's constitution and accordingly vacated the terminations and suspensions.

Judge Hogue construed article 98 of OMC's constitution, which states that "[p]unishment shall be decided for a person whose malfeasance has been determined before a tribunal," and that excommunication for general members of OMC is among the "punishments decided through tribunals." Judge Hogue provided guidance on the use of the term "tribunal": "[T]he definitions, both in my old-fashioned dictionary and on the Internet, define tribunal as the seat of a judge, the court or forum of justice. [¶] So I think that's important, because it suggests that some sort of hearing is contemplated by the word tribunal. . . . [¶] Okay, so that word tribunal I think is important, because I think this constitution envisioned something like a trial if someone is to be disciplined." Judge Hogue found that because the constitution contemplated something like a judicial

---

[6] One of the plaintiffs in the Excommunication Action was Young Song Lee, a defendant elder in the present case.

proceeding, it necessarily required notice of the proceeding and an opportunity to be heard in writing or otherwise.

On the last day of the trial, the parties asked Judge Hogue to clarify whether she was ordering defendant elders Jung and An reinstated to the Session. She suggested that their "status [as] Session members [was] [likely] mooted by the congregation's later selection of Session members." However, Judge Hogue declined to make any ruling on defendant elders Jung's and An's Session membership because she did not receive evidence on the issue.

### C. The Attempts to Terminate Pastors Park and Kim and the Dispute Over Session Membership

As of May 1, 2012, the Session consisted of seven members: pastors Park and Kim; the four plaintiff elders; and active elder Hyung Soo Choi (elder Choi), who did not take part in this action. On May 2, 2012, during a regular monthly meeting of the Session attended by all seven members, pastor Kim was asked to leave the room. Upon his departure, the Session purportedly terminated pastor Kim, effective that day, over the objection of pastor Park. On May 3, 2012, plaintiff elder Chai sent a letter to pastor Kim informing him of his termination. The letter did not reference any misconduct by pastor Kim, and it was the first notice he received of any proceeding to remove him from office. Pastor Kim refused to recognize his purported termination and continued to act as senior associate pastor.

On June 5, 2012 pastor Park received a letter from a disciplinary committee setting forth a list of questions regarding actions he allegedly took without the approval of the Session in violation of OMC's constitution.[7] The letter requested a response by 5:00 p.m. on June 8, 2012.

---

[7] The record is silent on the duties and purview of the disciplinary committee as of the date of this letter. We presume it is the same body as the disciplinary action committee that drafted new bylaws and rules regarding disciplinary action that took effect on June 13, 2012 (see *post*).

On June 6, 2012, the Session held its first monthly meeting since Judge Hogue's judgment in the Excommunication Action. Plaintiff elders, elder Choi, pastors Park and Kim, and defendant elders Lee, Jung, and An, were present for the meeting. According to the meeting minutes, pastor Park convened the meeting with pastor Kim and defendant elders. Pastors Park and Kim and defendant elders then left the meeting. Plaintiff elders and elder Choi remained and conducted a Session meeting. Thereafter, plaintiff elders ceased attending Session meetings called by pastor Park.

Pastor Park received a letter from plaintiff elder Chai and the chairman of OMC's board of directors, dated June 7, 2012. The letter stated that OMC's board of directors held an emergency meeting on June 7, 2012 and decided by unanimous vote to terminate pastor Park, effective the following day.[8] Pastor Park never received notice of the June 7, 2012 emergency meeting. He refused to abide by his purported termination and continued to conduct the affairs of the church.

On June 13, 2012, new bylaws and rules regarding disciplinary action took effect (disciplinary action bylaws). A disciplinary action committee consisting of three of the plaintiff elders, elder Choi, and two non-Session members drafted and passed the disciplinary action bylaws several weeks earlier on May 20, 2012. The bylaws authorized the disciplinary action committee to convene trials and impose punishment on OMC members, staff, and officers under specified procedures.

On July 1, 2012, pastor Park held a special congregational meeting. At the meeting, the congregation purportedly voted to reappoint and retain pastor Park as senior pastor of OMC; suspend the Session membership of plaintiff elders until final decision of the Session; and reelect pastors Park and Kim, the three defendant elders, and elder Choi to the Session. Pastor Park continued to hold Session meetings with defendant elders.

On August 22, 2012, purportedly suspended plaintiff elders and elder Choi gave notice to pastors Park and Kim of a non-regular meeting of the Session to be held on

---

8     Pastor Park had not responded to the questions in the June 5, 2012 letter when he received the June 7, 2012 termination letter.

August 30, 2012. The agenda for the meeting was the pastors' termination for alleged wrongful conduct and malfeasance. Pastors Park and Kim did not attend. The members of the Session who were present voted to terminate pastor Park and reconfirm pastor Kim's termination. On September 1, 2012, plaintiff elders Chai and Lee sent letters to pastors Park and Kim informing them of their termination for their wrongful conduct and malfeasance as enumerated in the August 22, 2012 notice. Pastors Park and Kim again refused to recognize their purported terminations and continued to conduct themselves as pastors of OMC and members of the Session.

## II. Procedural History

### A. Pre-Trial Proceedings

#### 1. Complaint and First Amended Complaint

On September 12, 2012, plaintiffs filed a complaint against pastors Park and Kim, alleging causes of action for permanent injunction, conversion, and interference with contracts. In light of the alleged termination of pastors Park and Kim, plaintiffs sought an injunction preventing them from acting as pastors of OMC and interfering with its operations. Plaintiffs sought damages for pastors Park's and Kim's alleged conversion of church donations and rents paid on real property owned by OMC. Plaintiffs also sought damages for pastor Park's alleged interference with OMC's contract with its property management company.

On October 15, 2012, plaintiffs filed their first amended complaint adding defendant elders and replacing the cause of action for permanent injunction with one for determination of the validity of elections and appointments of directors and permanent injunction pursuant to Corporations Code section 9418.[9] In that cause of action, plaintiffs alleged that after their purported termination, pastors Park and Kim improperly elected

---

[9] Corporations Code section 9418, subdivision (a) states, "Upon the filing of an action therefor by any director or member, or by any person who had the right to vote in the election at issue after such director, member, or person has exhausted any remedies provided in the articles or bylaws, the superior court of the proper county shall determine the validity of any election or appointment of any director of any corporation."

8

defendant elders to the Session and defendant elders conducted unauthorized activities to the detriment of the church. Plaintiffs sought an injunction against all defendants preventing them from interfering with church operations.

### 2. *Plaintiffs' Motion for Order to Determine Validity of Elections, Appointments and Reinstatements of Directors*

On the same day they filed their first amended complaint, plaintiffs also filed a motion to determine validity of elections, appointments, and reinstatements of directors and permanent injunction pursuant to Corporations Code section 9418 (Corporations Code motion). Plaintiffs sought an order invalidating defendants' purported election to the Session on July 1, 2012 and a preliminary injunction preventing defendants from interfering with the operations of OMC.

On March 29, 2013, the court held a hearing on plaintiffs' Corporations Code motion. The court concluded that the election of defendant elders at the July 1, 2012 special congregational meeting was invalid because that meeting was not properly called pursuant to OMC's constitution. The court also found that under the constitution's mandatory retirement age for elders and the time credits awarded by Judge Hogue in the Kang Action, defendant elders Young Song Lee and Jung were ineligible for election to the Session on July 1, 2012. However, the court found that plaintiffs failed to establish that defendant elder An was ineligible for election under the age requirement. The court declined to issue any opinion on whether, if it had been properly called, the special congregational meeting had the power to suspend plaintiff elders from the Session or elect members to the Session.

The court declined to grant a preliminary injunction because it lacked evidence to make any determination as to the composition of the Session either prior to July 1, 2012 or as of the date of the hearing. The court further stated that plaintiffs' Corporations Code motion did not establish that pastors Park and Kim were properly terminated.

The court also held a case management conference on March 29, 2013. Both sides waived their right to a jury trial, and the court set a trial date of July 15, 2013.

9

### 3. *Plaintiffs' Ex Parte Application to File Second Amended Complaint*

On May 15, 2013, plaintiffs filed an ex parte application for leave to file a second amended complaint to add a fourth cause of action for declaratory relief. Plaintiffs argued the amendment was necessary because, in its order on plaintiffs' Corporations Code motion, the court "refrained from ruling on the validity of reinstatement of the Pastors, and whether they were validly terminated in the first place, and who in fact were the Session members who controlled the church." According to plaintiffs, the court's order left the parties in "a quandry of who in fact controlled [OMC]." The court granted the ex parte application and continued the trial date to December 9, 2013.

Plaintiffs filed their second amended complaint on May 15, 2013. The newly added cause of action for declaratory relief alleged the existence of controversies over the purported terminations of pastors Park and Kim and the membership of the Session. Regarding the controversy over the Session, plaintiffs alleged as follows: "Plaintiffs contend that the only authorized Session members consist of the five Session members who remained after defendants Park and Kim were terminated as Pastor and Assistant Pastor, whereas defendants dispute this contention and contend that the Session consists of defendants Park, Kim, Lee, Jung, and An." Plaintiffs accordingly requested "a declaration as to (1) whether defendants Park and Kim were properly terminated pursuant to the rules and procedures of the OMC Constitution; and (2) who the authorized Session members are."

### B. First Phase of Trial

The parties agreed to bifurcate the purely legal issue of the pastors' terminations under the terms of OMC's constitution from other triable issues. The court ordered briefing and conducted the first phase of the trial on December 10, 2013 based on the parties' briefs, undisputed evidence, and argument from counsel.[10]

---

[10] Despite plaintiffs' later disapproval of their attorney's submission of the termination issue on the briefs and argument (see *post*), the record does not reflect that they objected to this procedure before or during the trial.

The court's ruling turned on its construction of articles 78, 80, 98, and 99 of OMC's constitution and their application to the action taken to terminate the pastors.

Article 78 governs the authority of the Session. It states that "the Session shall govern according to the teachings of the Bible on matters involving different views of the Church constitution or rules for the sanctity and peace of the Church" and that "the Session shall maintain peace and order within the Church and have the authority to administrate and discipline."

Article 80 enumerates the duties of the Session. It charges the Session with the duty to "handle matters concerning recognition, disciplinary action and punishment of members and officers of the church."

Article 98 covers punishment of general members and officers of OMC. It states, "[p]unishment shall be decided for a person whose malfeasance has been determined before a tribunal." "[P]unishments decided through tribunals" and "imposed upon officers of [OMC]" include "[s]uspension from active duty," "[d]ismissal from active duty," "[s]uspension," and "[t]ermination."

Article 99 is entitled "Procedure for Disciplinary Action." It states that "[a]ll individuals and matters subject to disciplinary action shall be punished pursuant to the rules. The rules for disciplinary action shall be determined separately."

On December 10, 2013, the court held that articles 78 and 80, which grant the Session the general power to punish and discipline, are further refined by article 98, which must be followed when terminating officers of OMC, including pastors Park and Kim. The court further held that a tribunal under article 98 is "similar to a hearing or a trial before which the person accused or the person whose rights are affected has effective notice so that he or she may present his or her case at the tribunal." The court found that pastors Kim and Park did not receive adequate notice of a specific hearing before a tribunal prior to their respective terminations on May 2 and June 7, 2012. The court

11

accordingly found that, due to inadequate notice, the terminations of pastors Park and Kim violated OMC's constitution.[11]

The court also addressed pastors Park's and Kim's purported terminations on August 30, 2012. By that time the disciplinary action bylaws, created pursuant to article 99 of OMC's constitution, were in effect. The bylaws detailed specific procedures for the disciplinary action committee to follow when disciplining persons. The bylaws state that the "Disciplinary Action Committee shall notify each person to be called upon by mail 7 days prior to a trial date. Such notice shall be given up to 2 times." The bylaws also state that the "Disciplinary Action Committee shall convene a trial with majority attendance."

The court found that these procedures were not followed at the August 30, 2012 Session meeting, and as a result, pastors Park and Kim were not properly removed from their positions as pastors of OMC.

## C. Termination of Plaintiffs' Counsel and Request for Trial Continuance

The court set the second phase of trial on the remaining issues for January 13, 2014. On January 7, 2014, plaintiffs and defendant pastors Park and Kim stipulated to a trial continuance of approximately 60 days so they could participate in a settlement conference. Pursuant to the stipulation, on January 9, 2014, pastors Park and Kim filed an ex parte application seeking the 60-day continuance. On that same date, defendant elders Young Song Lee and An, who were not parties to the stipulation, also filed an ex parte application seeking a trial continuance of approximately four months because they had just retained counsel. The court did not sign the stipulation and denied both ex parte continuance requests.

On the day scheduled for trial, January 13, 2014, plaintiffs filed a declaration seeking to relieve their counsel of record and requesting a trial continuance of 45 days to

---

[11] The court further found that pastor Kim's purported termination on May 2, 2012 was improper because the Session, assuming it constituted a tribunal, made no finding of malfeasance, as required by article 98. It similarly found that pastor Park's purported termination on June 7, 2012 was improper because the board of directors was not a tribunal and there was no finding of malfeasance.

12

secure new representation. The declaration stated that plaintiffs lost trust in their counsel when his handling of recent legal proceedings conflicted with plaintiffs' instructions. Plaintiffs claimed they disagreed with their counsel's agreement to conduct the first phase of trial "without a trial process or presentation of any evidence or witness [sic]." They also faulted counsel for failing to make certain arguments at the first phase of trial. When plaintiffs met with their counsel on January 8, 2014, he recommended that plaintiffs "resolve the matter by arbitration" and informed them that he had ceased preparing for trial because of the stipulated trial continuance. Plaintiffs sent a letter of termination to their counsel on January 11, 2014 .

The court agreed to relieve plaintiffs' counsel over defendants' objection. According to the court's minutes, plaintiffs made an oral motion to continue the trial date. The court granted the motion, but only trailed the trial for two days, noting that plaintiffs' "eve of trial" termination of counsel prejudiced defendants.

### D.    Second Phase of Trial

On January 15, 2014, plaintiffs appeared for trial with new counsel. The court allowed the parties to conduct settlement discussions and continued proceedings to the next day. On January 16, 2014, the court presided over the second phase of trial to address defendant elders' Session membership as of September 12, 2012.[12]

The parties did not retain a court reporter, and the court did not issue a statement of decision. We accordingly have no record of the proceedings except for the court's minutes. According to the minutes, the parties stipulated that in the Kang and Excommunication Actions Judge Hogue found that all three defendant elders "were illegally removed from office, in violation of the [OMC] Constitution." The minutes further state, "Court and counsel have calculated the service times [] and credits of Lee, Jung, and An, and all parties stipulate that said calculations are correct, and are to be applied pursuant to [the judgments in the Kang and Excommunication Actions], and that

---

[12]    The parties agreed that Session membership should be determined as of the date plaintiffs filed their complaint.

13

Lee, Jung, and An were session members at the time of the filing of this instant action." Accordingly, the court found that defendant elders were Session members at the time plaintiffs filed their original complaint on September 12, 2012.

The court entered judgment on February 20, 2014. The judgment states that, "[t]he Court did not rule on the issue of Plaintiffs' Session membership terms as the Court deemed that it was not a subject of the [second amended complaint]."

### E.    Plaintiffs' Motion for New Trial

In March 2014, plaintiffs moved for a new trial on numerous grounds. Plaintiffs contended that the court's finding that pastors Park and Kim were improperly terminated was based on a misinterpretation of OMC's constitution and disciplinary action bylaws. Plaintiffs further argued that the court's finding that defendant elders were members of the Session as of September 12, 2012 contradicted undisputed facts. Plaintiffs also complained of the trial court's exclusion of witnesses and treatment of witness testimony at the second phase of trial. They claimed they were prejudiced by the court's exclusion of plaintiff elder Chai's testimony because he could not speak English well enough to testify without an interpreter. They also contended that the court improperly dismissed pastor Park from the witness stand before he testified, depriving plaintiffs of an opportunity to cross-examine him. Plaintiffs further argued that the court "misapplied" plaintiff elder Um's testimony. Referring to the cause of action for declaratory relief, plaintiffs argued that the court failed to adjudicate all issues raised in the second amended complaint. Finally, plaintiffs argued the court's decision to provide them only two days to retain new counsel prejudiced them and prevented them from having a fair trial.[13]

The court denied plaintiffs' motion for new trial. Plaintiffs appealed.

---

[13]    Plaintiffs' motion provided a different version of the events leading to their counsel's termination. According to plaintiffs, counsel used profanity against plaintiff Um in the courthouse hallway after the first phase of trial. Further, on January 11, 2014, two days before trial, plaintiffs' counsel sent a text message to one of the plaintiff elders stating, "Sub us out of the case."

14

## DISCUSSION

**I.    The Court Did Not Err in Finding Pastors Park and Kim Were Not Properly Terminated**

Plaintiffs contend that at the first phase of trial the court misinterpreted the provisions of OMC's constitution and therefore erred in finding that pastors Park and Kim were improperly terminated. "When the trial court's interpretation is based solely upon the terms of the written instrument, and there is no conflict in the evidence, we review the ruling de novo. [Citation.] Although we review the construction of the express terms of the instrument de novo, we review the evidence regarding the interpretation of the words under the substantial evidence test. [Citation.] We must uphold any factual determination of the trial court, express or implied, so long as there is substantial evidence in the record to support it. [Citation.] If the evidence is conflicting, we must accept that which supports the trial court's decision and make all reasonable inferences in support of the judgment. [Citation.]" (*Singh v. Singh* (2004) 114 Cal.App.4th 1264, 1293-94 (*Singh*).) We find that the trial court did not err in concluding that pastors Park's and Kim's terminations were improper under the terms of OMC's constitution.

We construe articles of incorporation and corporate bylaws, like OMC's constitution, """"according to the general rules governing the construction of statutes and contracts." [Citation.]'" (*Singh*, *supra*, 114 Cal.App.4th at p. 1294.) "The principles governing construction of written instruments are well settled. 'The mutual intention of the contracting parties at the time the contract was formed governs. [Citations.] We ascertain that intention solely from the written contract, if possible . . . . [Citations.] We consider the contract as a whole and construe the language in context, rather than interpret a provision in isolation. [Citation.] We interpret words in a contract in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. [Citation.] If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs.

15

[Citation.]' [Citation.]" (*Starlight Ridge South Homeowners Ass'n v. Hunter-Bloor* (2009) 177 Cal.App.4th 440, 447 (*Starlight Ridge*).)

Here, neither article 78 nor 80 of the OMC constitution grants the Session absolute authority to terminate pastors without cause upon a simple majority vote. Article 78 vests in the Session the "authority to administrate and discipline." Article 80 states that the Session has the duty "[t]o handle matters concerning recognition, disciplinary action and punishment of members and officers of [OMC]," a group the parties stipulated includes pastors. These provisions by their plain terms merely pronounce the Session's general authority over matters of church administration and the recognition and discipline of church members and officers. Nothing in these articles grants the session absolute authority to terminate pastors without cause. Plaintiffs suggest that such a conclusion must follow from pastors' status as at-will employees, but provide neither factual nor legal support for their assertion that pastors are at-will employees of OMC. We need not consider unsupported assertions on appeal (*Cahill v. San Diego Gas & Elec. Co*. (2011) 194 Cal.App.4th 939, 956; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852; *Gurthey v. State of California* (1998) 63 Cal.App.4th 1108, 1115; see also Cal. Rules of Court, rule 8.204(a)(1)(C)), and do not do so here.

We accordingly find no error in the trial court's conclusion that article 78 and 80—which make general references to discipline, disciplinary action, and punishment— are further refined by article 98 and 99, which more specifically govern disciplinary action and the "punishment" of termination. (Civ. Code, § 3534 ["Particular expressions qualify those which are general."]; *Queen of Angels Hospital v. Younger* (1977) 66 Cal.App.3d 359, 367, fn.2 [broad grant of power in articles of incorporation must be read in light of its more specific provisions].) Article 98 states that "punishment shall be decided for a person whose malfeasance has been determined before a tribunal," and includes termination among the punishments that the tribunals may impose upon officers, which as noted above includes pastors. Article 99 provides that individuals subject to disciplinary action shall be punished pursuant to rules, which "shall be determined

separately." These are the only specific provisions in the OMC constitution that define or govern termination procedures for pastors, who enjoy other employment protections such as the preservation of their title "for one's lifetime" (Article 35), the guarantee of a congregational vote in the event their resignation ever is recommended (Article 42), and, in the case of the assistant pastor, a fixed tenure of one year (Article 40). Taken as a whole, the OMC constitution does not grant the Session absolute authority to terminate pastors without cause or absent the procedural protections established by articles 98 and 99.

The trial court further concluded that the "tribunal" contemplated by article 98 is "a hearing or trial before which the person accused or the person whose rights are affected has effective notice so that he or she may present his or her case at the tribunal." We agree. As Judge Hogue stated in the Excommunication Action, dictionaries define "tribunal" as "the seat of a judge" or a "court or forum of justice." (See, e.g., American Heritage Dict. (2d college ed. 1982) p. 1293 ["A seat or court of justice."]; Webster's New World Dict. (3d college ed. 1991) p. 1427 ["a court of justice"].) Because OMC's constitution mandates that a tribunal or forum of justice must impose punishment on officers of OMC, it clearly contemplates that such proceedings will be conducted with fair procedures, including notice of the proceeding and an opportunity to be heard.

Therefore, pastors Park and Kim could not be terminated under the terms of OMC's constitution without receiving notice of a tribunal in which their termination was at issue and an opportunity to be heard on the matter.[14] The trial court properly found that pastors Park and Kim were not given such notice or opportunity to respond.

The Session never gave pastor Kim notice of the May 2, 2012 proceeding at which he was purportedly terminated. Nor did the Session give him an opportunity to respond

---

[14] Prior to June 13, 2012, when the disciplinary action bylaws went into effect, it appears that a quorum of the Session could, at least in theory, function as the tribunal contemplated by article 98, as long as it provided notice and an opportunity to be heard to those it proposed to punish.

17

to the allegations made against him at the meeting. In fact, pastor Kim was purposefully excluded from the meeting. The active elders then voted to terminate him. By the next day, when Pastor Kim first received his notice of the proceeding and its outcome, his purported termination was already effective. Assuming the session constituted a tribunal, it failed to provide pastor Kim with the fair procedures required by article 98.

On June 5, 2012, pastor Park received a letter from a disciplinary committee requesting his response to allegations against him by June 8, 2012. However, pastor Park was purportedly terminated at an emergency meeting held on June 7, 2012, before he had an opportunity to respond to the June 5, 2012 letter. He did not receive notice of that meeting and did not attend it. He first learned of the proceedings and his purported termination in a letter sent after the meeting had concluded. Even assuming the meeting constituted a tribunal, pastor Park did not receive notice or an opportunity to respond as required by article 98.

Further, we find no error in the trial court's conclusion that the Session did not properly terminate pastors Park and Kim on August 30, 2012. On August 22, 2012, in an apparent attempt to provide notice and an opportunity to be heard, the Session sent pastors Park and Kim notice of a non-regular meeting of the Session. At the meeting, the Session purported to terminate pastors Park and Kim, who were not present. The Session then sent letters to the pastors informing them of their terminations. However, by August 2012, the disciplinary action bylaws were in effect. Pursuant to article 99 of OMC's constitution, punishment was to be imposed pursuant to the rules established by those bylaws. Among other things, the disciplinary action bylaws stated that the disciplinary action committee was to provide notice of an upcoming trial and the disciplinary action committee was to conduct such trials.

These procedures were not followed for pastors Park's and Kim's purported August 30, 2012 terminations. Contrary to the bylaws, the disciplinary action committee was not involved. The Session, which is distinct from the disciplinary action committee, notified pastors Park and Kim of only a non-regular meeting of the Session, not a trial

18

conducted by the committee. And in fact, the August 30, 2012 proceeding was conducted by the Session, not the disciplinary action committee. Accordingly, the Session's attempt to terminate pastors Park and Kim on August 30, 2012 was improper under OMC's constitution and the disciplinary action bylaws.

## II. Plaintiffs Fail to Meet Their Burden Of Showing that the Court Erred in Finding that Defendant Elders Lee, Jung, and An Were Session Members

Plaintiffs contend that in light of the undisputed facts it is impossible for defendant elders to have been Session members on September 12, 2012. Plaintiffs argue that given defendant elders' undisputed ages, the undisputed commencement date of their terms on the Session, and the time credits granted to them in the Kang Action, all of their terms expired well before September 12, 2012. They further argue that the judgment in the Excommunication Action did not grant defendant elders any time credits and that defendant elder Young Song Lee could not have been entitled to any purported time credits from the Excommunication Action because he was a plaintiff in that action. However, the record does not include a reporter's transcript of the second phase of trial conducted on January 16, 2014. The paucity of the record is fatal to plaintiffs' challenge to the court's finding that defendant elders were Session Members as of September 12, 2012.

The judgment and orders of the trial court are presumed on appeal to be correct, "'and all intendments and presumptions are indulged'" in their favor. (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718, quoting *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Appellants bear the burden of overcoming this presumption by showing error on an adequate record. Where the appellants fail to provide an adequate reporter's transcript, "it is presumed that the unreported trial testimony would demonstrate the absence of error." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992; see also *Smith v. Laguna Sur Villas Condominium Assn.* (2000) 79 Cal.App.4th 639, 646-647; *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1320-1321.) "Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellants]."

19

(*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 (*Hernandez*).)

Here, plaintiffs failed to meet their burden of providing an adequate record on appeal. The parties did not retain a court reporter for the second phase of trial on January 16, 2014, the court did not issue a statement of decision, and plaintiffs have not attempted to create a record of the January 16, 2014 proceedings by any other means. As a result, we cannot undertake a meaningful review of plaintiffs' challenge to the court's findings regarding defendant elders' Session membership.

The court's minutes provide the only record of the January 16, 2014 proceedings. The minutes state, "Court and counsel have calculated the service times [] and credits of Lee, Jung, and An, and all parties stipulate that said calculations are correct, and are to be applied pursuant to [Judge Hogue's judgments in the Kang and Excommunication Actions], and that Lee, Jung, and An were session members at the time of the filing of this instant action." Thus, the record clearly establishes that the parties stipulated to the calculation of service times and time credits to which defendant elders were entitled. However, the record is silent on how the parties arrived at the stipulations, the precise terms of those stipulations, and how the court applied them. The stipulation appears to include the very issue to be determined -- that defendant elders Lee, Jung, and An were Session members at the time of the filing of the instant action. [15] On appeal, the parties propose conflicting calculations for the service times and time credits to be applied to defendant elders. Because plaintiffs have provided an inadequate record, we do not know the actual service times and time credits to which the parties stipulated or how the court applied them. Therefore, we must presume that the court applied the parties' stipulations correctly and properly found that defendant elders were Session members at the time this

---

[15] Admittedly, it would be unusual for the plaintiffs to stipulate that defendant elders were Session members at the time the original complaint was filed, because that was the very issue to be tried. Nonetheless, our review is limited to the record before us, and the minutes reflect exactly that.

action was filed on September 12, 2012. (See *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.) We are accordingly compelled by the state of the record to presume no error and affirm.[16] (*Hernandez, supra,* 78 Cal.App.4th at p. 502.)

## III. The Court Did Not Abuse Its Discretion in Declining to Rule on Plaintiffs' Session Membership

Plaintiffs contend the court failed to fully adjudicate their cause of action for declaratory relief because it did not determine "who the authorized Session members are."[17] The parties agree that we review the court's purported failure to fully adjudicate the issue of Session membership for an abuse of discretion. We find no abuse of discretion.

In their cause of action for declaratory relief, plaintiffs alleged that following the purported termination of pastors Park and Kim, the Session consisted of plaintiff elders and one non-party Session member, but that defendants disputed this and contended that the Session was comprised of defendants. Plaintiffs accordingly sought a declaration of "who the authorized Session members are." Following the first phase of trial on the termination of pastors Park and Kim, the court held the second phase of trial on what it described as the "only issue remaining in Plaintiffs' Second Amended Complaint . . . : the validity of the Session membership of the three Defendant Elders." The court's

---

[16]  Plaintiffs contend that the court's March 29, 2013 order on plaintiffs' Corporations Code motion determined facts establishing that defendant elders could not be Session members on September 12, 2012. We disagree. The court's March 29, 2013 order was based on the evidence before it at that time. The court presumably did not base that order on the same service times and time credits to which the parties stipulated at the trial. Further, the court's findings during the second phase of trial are not inconsistent with its March 29, 2013 order. That order was limited in scope and, regarding defendant elders' Session membership, held only that defendants Jung and Young Song Lee were ineligible for election to the Session on July 1, 2012 based on the mandatory retirement age. As for defendant An, the court found that plaintiffs failed to establish that he was ineligible for election due to age restrictions. The March 29, 2013 order did not address whether defendant elders were members of the Session as of September 12, 2012.

[17]  While the court did not explicitly adjudicate plaintiffs' causes of action for conversion and interference with contracts, plaintiffs do not raise those issues on appeal.

judgment states that "[t]he Court did not rule on the issue of Plaintiffs' Session membership terms as the Court deemed that it was not a subject of the [second amended complaint]."

The court acted within its discretion in finding that the second amended complaint did not put plaintiffs' Session membership at issue. In addition to the pastors' termination, the second amended complaint was primarily concerned with the Session membership of Lee, Jung, and An. We agree with defendants that plaintiffs' request for a declaration of "who the authorized Session members are" is vague and ambiguous.

Plaintiffs contend that their ex parte application seeking leave to file a second amended complaint informed the court that it must determine "who controls [OMC], which includes who is validly the Session." However, plaintiffs' ex parte application is just as vague as the allegations of their second amended complaint.

Given the second amended complaint's focus on the membership of defendant elders Lee, Jung, and An and the absence of allegations specifically requesting a determination of plaintiffs' Session membership, it was not unreasonable for the court to conclude that plaintiffs' Session membership was not at issue in the second amended complaint. The court was within its broad discretion in concluding that a determination of the Session membership of defendant elders resolved the issue of "who the authorized Session members are."

In addition, because the record does not include a reporter's transcript of the second phase of trial, we do not know whether plaintiffs raised this issue at trial, and if they did, how the court responded. In the absence of a record, we find no abuse of discretion.

## IV. The Court Did Not Abuse Its Discretion in Denying Plaintiffs a Longer Trial Continuance

Plaintiffs contend that the court abused its discretion when it denied their request for a trial continuance to afford them time to retain new counsel after terminating their prior counsel. "A denial of a request for a continuance constitutes an abuse of discretion where the ruling is arbitrary, capricious, and contrary to the interests of justice under all

the circumstances. [Citation.]" (*Vann v. Shilleh* (1975) 54 Cal.App.3d 192, 196.) We find no abuse of discretion.

Rule 3.1332 of the California Rules of Court states that "[c]ontinuances of trials are disfavored," and that "the dates assigned for a trial are firm. All parties and their counsel must regard the date set for trial as certain." (Cal. Rules of Court, rule 3.1332(a) & (c).) Continuances may be granted "on an affirmative showing of good cause," including "[t]he substitution of trial counsel, but only where there is an affirmative showing that the substitution is required in the interests of justice." (Cal. Rules of Court, rule 3.1332(c)(4). In ruling on a motion for continuance, "the court must consider all the facts and circumstances that are relevant to that determination," including the proximity of the trial date, whether any previous continuances were granted, the prejudice that parties will suffer as a result of a continuance, whether all parties have stipulated to a continuance, and the court's calendar." (Cal. Rules of Court, rule 3.1332(d).)

Further, "'[p]arties litigant [*sic*] have no absolute right to insist upon a change of counsel at the last moment before the time set for the commencement of the trial, where such change of counsel requires a continuance in order that the case may be properly prepared for trial.' [Citation.] 'If a (trial) must be continued . . . every time an attorney withdraws from the case, there would be no end to the matter.' [Citations.]" (*County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 783-784.)

Even assuming plaintiffs' termination of their trial counsel was in the interests of justice, the court was not required under the circumstances to grant plaintiffs more than a two-day continuance. Several of the factors the court is required to consider weighed against a trial continuance. Plaintiffs moved to terminate their counsel and continue the trial date on the day the second phase of trial was scheduled to begin. The court had already granted a continuance of approximately six months to accommodate the filing of plaintiffs' second amended complaint. Further, plaintiffs' request for a continuance came just four days after the court had denied defendant elders Lee's and An's similar request

23

for a continuance based on their recent retention of counsel. It was certainly within the court's discretion to deny plaintiffs a substantial continuance based on the same ground—a last minute substitution of counsel. Finally, the court found that a continuance would prejudice defendants. Under these circumstances, the court acted within its discretion in refusing to grant plaintiffs a longer continuance.

## V.    The Court Did Not Abuse Its Discretion in Denying Plaintiffs' Motion for New Trial

Plaintiffs contend that the court should have granted their motion for new trial based on the evidence they presented of defendant elders' Session membership terms. We review a trial court's order on a motion for new trial for an abuse of discretion. (*Fassberg Const. Co. v. Housing Authority of City of Los Angeles* (2007) 151 Cal.App.4th 720, 752 ["A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal. [Citation.]."]) We find no abuse of discretion.

Plaintiffs limit their challenge to the court's order denying their motion for new trial to the issue of defendant elders' Session membership. However, as discussed above, we have no reporter's transcript of the second phase of trial or any other record of the terms of the parties' stipulations regarding defendant elders' service times and time credits. Again, in light of the inadequate record we must presume that the court applied the stipulations correctly and properly found that defendant elders were Session members at the time this action was filed. (See *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.) Plaintiffs did not provide any evidence in their motion for new trial sufficient to overcome this presumption. On this record, we find no abuse of discretion.

**DISPOSITION**

We affirm the judgment and order denying plaintiffs' motion for new trial.

Defendants are to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

25